[No. A103685. First Dist., Div. One. June 11, 2004.]

JEFFREY GARETT FREDENBURG, Plaintiff and Appellant, v.
CITY OF FREMONT et al., Defendants and Respondents.

410

COUNSEL

Law Offices of Panos Lagos and Panos Lagos for Plaintiff and Appellant.

Edrington, Schirmer & Murphy and Dolores M. Donohue for Defendants and Respondents.

Bill Lockyer, Attorney General, Janet E. Neeley and Jennifer M. Runte, Deputy Attorneys General, as Amici Curiae on behalf of Defendants and Respondents.

OPINION

MARCHIANO, P. J.—To implement California's Megan's Law, the police department of the City of Fremont (the City) maintains a Web site with "pin maps" of neighborhoods showing the location—but not the name and address—of sex offenders living in the community. Plaintiff, a sex offender, sued the City and several police officials, claiming they violated his right to privacy because the pin map of his neighborhood disclosed his street address in violation of Megan's Law. The trial court granted a defense summary judgment. We affirm because the pin map did not disclose plaintiff's address but only his general location—in which he has no constitutionally protected right to privacy. We also affirm because the pin maps do not violate Megan's Law.

## I. BACKGROUND

### A. The Origin of Megan's Laws

In 1994, a seven-year-old New Jersey girl named Megan Kanka was abducted, raped and murdered by a neighbor. Megan's family had not known the neighbor had previously been convicted of sex offenses involving young girls. (*Smith v. Doe* (2003) 538 U.S. 84, 89–90 [155 L.Ed.2d 164, 123 S.Ct. 1140] (*Smith*); *A.A. ex rel. M.M. v. New Jersey* (3rd Cir. 2003) 341 F.3d 206,

208 (*A.A.*).) "The crime gave impetus to laws for mandatory registration of sex offenders and corresponding community notification." (*Smith, supra,* at p. 89.)

Later in 1994, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program (42 U.S.C. § 14071), which conditioned certain federal law enforcement funding on a state's adoption of a "Megan's Law" for the registration of sex offenders and the notification to the community of sex offenders living in their midst. By 1996, every state, the District of Columbia, and the federal government had passed a Megan's Law. (*Smith, supra,* 538 U.S. at pp. 89–90; *A.A., supra,* 341 F.3d at p. 208.)

### B. California's Megan's Law

### 1.

California enacted its Megan's Law in 1996. (Stats. 1996, ch. 908.)[1] In an uncodified preamble to the statute, the Legislature made several findings and declarations. The Legislature found that sex offenders "pose a high risk of engaging in further offenses after release," and that "protection of the public from these offenders is a paramount public interest." (Stats. 1996, ch. 908, § 1(a).)

The Legislature further found that the public had a "compelling and necessary . . . interest" in obtaining information about released sex offenders so they can "adequately protect themselves and their children from these persons." (Stats. 1996, ch. 908, § 1(b).) Because of "the public's interest in public safety," released sex offenders "have a reduced expectation of privacy . . . ." (Stats. 1996, ch. 908, § 1(c).)

"In balancing the offenders' due process and other rights against the interests of public security, the Legislature finds that releasing information about sex offenders under the circumstances specified in this act will further the primary government interest of protecting vulnerable populations from potential harm." (Stats. 1996, ch. 908, § 1(d).) The Legislature found that (1) the registration of sex offenders, already required by Penal Code section 290; (2) "the public release of specified information about certain sex offenders" as contemplated by Megan's Law; and (3) the contemplated "public notice of

---

[1] Prior to 1996, sex offenders were required to register under Penal Code section 290, and in 1994 the Legislature enacted an embryonic system of limited public disclosure (Stats. 1994, ch. 867, § 4, pp. 4396–4400). But the expansive system we now know as Megan's Law was first enacted in 1996.

the presence of certain high-risk sexual offenders in communities" will combine to further the governmental interest of public safety. (Stats. 1996, ch. 908, § 1(e).)

The Legislature distinguished between "serious" and "high-risk" sex offenders. "To protect the safety and general welfare of the people of this state, it is necessary to provide for continued registration of sex offenders, for the public release of specified information regarding *certain more serious sex offenders*, and for community notification *regarding high-risk sex offenders*" who are about to be released or who already live in the community. (Stats. 1996, ch. 908, § 1(f), italics added.) The policy of releasing information to the public *"about serious and high-risk sex offenders"* is not meant to be punitive but is designed simply to protect the public. (*Ibid.*, italics added.)

Finally, the Legislature addressed the possibility of misuse of Megan's Law information. "The Legislature . . . declares . . . that in making information available about certain sex offenders to the public, it does not intend that the information be used to inflict retribution or additional punishment" on the sex offender. The Legislature found "that the dangers to the public of nondisclosure far outweigh the risk of possible misuse of the information," and referred to studies in Oregon and Washington showing that Megan's Laws in those states "resulted in little criminal misuse of [disclosed] information . . . ." (Stats. 1996, ch. 908, § 1(g).)

2.

California's Megan's Law (Penal Code §§ 290.4, 290.45) is a scheme of detailed provisions for the collection and limited disclosure of information regarding sex offenders who are required to register by Penal Code section 290.[2] Section 290.4 deals with collection of information and disclosure by telephone and CD-ROM. Section 290.45 deals with community notification.

*Section 290.4*

First, the Department of Justice (DOJ) must compile information on "any person" required to register as a sex offender because of a conviction for any of the sex crimes set forth in section 290.4. (§ 290.4, subd. (a)(1).) This information "shall be categorized by community of residence and ZIP Code" and "shall include the names and known aliases of the person, a photograph, a physical description, gender, race, date of birth, the criminal history, and the

---

[2] Subsequent statutory citations are to the Penal Code unless otherwise indicated. We do not discuss provisions of Megan's Law, mostly administrative, which are not pertinent to this appeal.

address, including ZIP Code, in which the person resides," plus any other information DOJ deems relevant—except "information that would identify the victim." (§ 290.4, subd. (a)(2).) We shall refer to this information as "section (a)(2) information."

Second, DOJ must operate a "900" telephone number for the public to call to determine whether a given person is a registered sex offender governed by Megan's Law. The caller must divulge his or her first name, middle initial, and last name. If the person inquired about "reasonably appears" to be a registered sex offender, DOJ must provide the caller with the section (a)(2) information—except that DOJ may *not* reveal to the caller the street address of the sex offender, but only the ZIP Code of the area in which the offender lives. (§ 290.4, subd. (a)(3).)[3] The caller is also told it is unlawful to use the information obtained to commit a crime against, discriminate against, or harass a registered sex offender. (§ 290.4, subd. (a)(5)(C)(v).)

Third, DOJ must "provide a CD-ROM or other electronic medium" containing the section (a)(2) information, except for the sex offender's street address.[4] DOJ must update and distribute the CD-ROM to each county sheriff, police departments of cities with a population of more than 200,000, and certain other designated law enforcement agencies.

The sheriff, police departments, and law enforcement agencies must make the CD-ROM available for public viewing in accordance with a strict application process, involving the presentation of proper identification and, at the agency's option, a statement of an "articulable purpose" for viewing. The applicant must sign a statement stating he or she is not a registered sex offender; understands the purpose of releasing information about sex offenders is to protect the public, especially children; and understands "it is unlawful to use information obtained from the CD-ROM or other electronic medium to commit a crime against any [registered sex offender] or to engage in illegal discrimination or harassment of any [registered sex offender]." (§ 290.4, subd. (a)(4)(A).)

Fourth, section 290.4 prohibits the misuse of disclosed information and provides for criminal penalties and other sanctions. A person who uses such information to commit a felony "shall" be punished by a five-year term in state prison, in addition and consecutive to any other punishment. (§ 290.4, subd. (b)(1).) A person who uses such information to commit a misdemeanor is subject to a fine in addition to other punishment. (§ 290.4, subd. (b)(2).)

---

[3] Also, DOJ may not tell a caller (1) the name and address of the sex offender's employer; (2) the sex offender's criminal history, save for the specific crimes triggering the registration requirement; and (3) any information identifying the victim. (§ 290.4, subd. (a)(3).)

[4] And also excepting the information in footnote 3, *ante.* (§ 290.4, subd. (a)(4)(A), (C).)

There are additional criminal penalties for unauthorized disclosure of information from CD-ROM's or the removal of CD-ROM's from the custody of law enforcement. (§ 290.4, subds. (c) & (d).)

Section 290.4 also prohibits the unauthorized use of disclosed information with regard to health insurance, insurance, loans, credit, employment, education, housing, and benefits, privileges and services provided by a business establishment. (§ 290.4, subd. (e)(1), (2).) Such unauthorized use makes the user liable for actual damages, punitive damages, attorney's fees, or a civil penalty. (§ 290.4, subd. (e)(3)(A).) Megan's Law also authorizes lawsuits for injunctive relief against individuals or groups who misuse the 900 number. (§ 290.4, subd. (e)(3)(B).)

Fifth, the section reemphasizes, in a separate provision, that sex offender addresses are generally not disclosed: "This section shall not be deemed to authorize the publication, distribution, or disclosure of the address of any person about whom information can be published, distributed, or disclosed pursuant to this section." (§ 290.4, subd. (f).)

*Section 290.45*

Section 290.45 provides for additional public disclosure in two situations: (1) where there is reasonable suspicion that a person is at risk from a sex offender (§ 290.45, subd. (a)); and (2) in the case of a high-risk sex offender (§ 290.45, subd. (b)).

*Reasonable Suspicion*

"When a peace officer reasonably suspects, based on information that has come to his or her attention through information provided by any peace officer or member of the public, that a child or other person may be at risk" from a registered sex offender, a law enforcement agency may disclose certain specified information. (§ 290.45, subd. (a)(1).)

This information, set forth in section 290.45, subdivision (a)(4) (subdivision (a)(4)), includes the sex offender's full name and known aliases; gender and race; physical description and photograph; date of birth; crimes resulting in registration and the dates of their commission; the type of victim targeted by the offender; any relevant parole or probation conditions; the date of release from confinement; and the offender's enrollment, employment or vocational status with any institution of higher learning. (§ 290.45, subd. (a)(4)(A), (B), (C), (D), (E), (F), (G), (H), (K), (L), (M), (N), (O).)

The subdivision (a)(4) information also includes "the offender's address, which must be verified prior to publication" (§ 290.45, subd. (a)(4)(I)) and

the description and license plate number of the vehicles the offender is known to own or drive. (§ 290.45, subd. (a)(4)(J).)

Law enforcement may disclose the subdivision (a)(4) information to persons or organizations "the offender is likely to encounter," including schools, day care centers, and "community members at risk." (§ 290.45, subd. (a)(1)(A), (B).) Law enforcement may also disclose to additional persons under certain conditions. (§ 290.45, subd. (a)(2).) And disclosure may not identify the sex offender's victim. (§ 290.45, subd. (a)(4).)

### High-Risk Sex Offender

Section 290.45, subdivision (b) sets forth a detailed definition of a high-risk sex offender. In essence, a high-risk sex offender is a registered sex offender who has been convicted of multiple violent offenses, including at least one violent sex offense (as defined in the statute). (§ 290.45, subd. (b)(1)(A), (B), (C); see Atty. Gen. Lockyer, Rep. to Cal. Legis.: Cal. Sex Offender Information Megan's Law (July 2002) p. 4 (Report).)

DOJ is statutorily obligated to continually search the records of sex offender registrations and identify high-risk sex offenders. Four times a year DOJ must send to every police chief and county sheriff, and to other designated law enforcement agencies on request, information identifying high-risk sex offenders. (§ 290.45, subd. (b)(2).) DOJ and any law enforcement agency receiving such identifying information may disclose, "by whatever means the agency deems necessary to ensure the public safety," information equivalent to the subdivision (a)(4) information discussed above—including the address of the high-risk sex offender. (§ 290.45, subd. (b)(3).)

Section 290.45 also provides for criminal penalties for the misuse of disclosed information. (§ 290.45, subd. (e).)

3.

■ The Attorney General as head of DOJ has a key role in administering Megan's Law and has interpreted the Law as establishing three classifications of sex offenders: high-risk, serious, and "other." (Report, *supra*, at p. 4.) Megan's Law defines a high-risk sex offender but does not define a serious sex offender—despite the mention of serious sex offenders in the uncodified preamble. But clearly the preamble contemplates that a serious sex offender is of a class less severe than a high-risk sex offender, especially given the definition of the latter category involving conviction of multiple crimes of violence. The Attorney General has defined a serious sex offender as

one convicted of certain offenses, including child molestation, who does not have the aggravated criminal record sufficient to qualify him as a high-risk offender. (Report, *supra*, at p. 4.)

According to the Attorney General's interpretation, Megan's Law permits public disclosure of information regarding only high-risk and serious sex offenders—not those classified as "other," whose "only convicted sex offense" is a relatively minor crime involving, inter alia, "pornography, exhibitionism, [and] misdemeanor sexual battery . . . ." (Report, *supra*, at pp. 4–5.)

4.

■ This case raises questions about the permissible disclosure of a sex offender's address under Megan's Law. Section 290.4 does not allow the disclosure of the street address, but only the general location of a sex offender's residence. Megan's Law only allows the disclosure of the street address of the sex offender in the two limited situations governed by section 290.45: the case of reasonable suspicion of risk or the case of the high-risk offender. Thus, if there is no reasonable suspicion that a person is at risk, the street address of a serious sex offender cannot be disclosed.

## II. FACTS

As plaintiff correctly concedes, the facts are for the most part undisputed.

The Fremont Police Department (Department) maintains a World Wide Web site at www.fremontpolice.org. The Web site contains pin maps labeled "Megan's Law Sexual Offender Maps." The maps are street maps, indexed by the neighborhood of the nearest public or private school, community park, or library. A map of a given neighborhood will show all schools, libraries, parks and community centers, as well as the general location of the residence of a registered sex offender in relation to those schools, libraries, and parks. The general location is indicated by a colored dot on the map, red for a high-risk offender and purple for a serious offender. The dot is placed on the street where the sex offender lives, in the 100-block of his residence. The maps do not contain the name, street address, or other information identifying a particular sex offender.[5]

---

[5] Some of the facts in the preceding paragraph are taken from the record of the summary judgment proceedings. Additional facts are taken from a selection of pin maps obtained·from the Department's Web site. These undisputed additional facts are presented solely for the limited purpose of providing general information to the reader to facilitate understanding of the nature of the pin maps.

■ We may consider these undisputed additional facts under our power to take evidence on appeal, and to take documentary evidence without a hearing. (Code Civ. Proc., § 909; Cal.

Before it placed the sex-offender pin maps on its Web site, the Department asked the Attorney General if the maps could be placed on the Internet *without* violating Megan's Law's limitations on the disclosure of information about sex offenders. In a letter dated June 21, 1999, a deputy attorney general informed the Department the pin maps did not violate Megan's Law and could be legally posted on the Web site because the maps do not "contain any identifying information about the offenders" including "exact addresses."

Plaintiff was convicted of Penal Code section 647.6, annoying or molesting a child under the age of 18, a misdemeanor. He was required to register as a sex offender under Penal Code section 290. He lived in the City of Fremont from May 2001 until April 2002, and registered with the Department as a sex offender.

Plaintiff was considered a serious sex offender under Megan's Law in light of the Attorney General's definition of that classification. He was classified as such by the DOJ—not by the Department or by defendants.

The Department placed a purple dot on the pin map of plaintiff's neighborhood, near the intersection of Glenmoor and Norris. Plaintiff lived with his parents on Norris Street, near the intersection. Plaintiff claims that as a result of the placement of the dot on the pin map, his neighbors learned of his presence and subjected him to harassment and verbal abuse, causing him to move out of his parents' house on April 12, 2002. But there is no evidence in the record that any person who may have harassed plaintiff logged on to the Department's Web site and viewed the pin map of plaintiff's neighborhood. No evidence links the Web site's format or information as a source of plaintiff's mistreatment.

Plaintiff sued the City of Fremont, Fremont Police Chief Craig Steckler, and Fremont Police Detective Pat Hunt, who was responsible for administering Megan's Law for the Department. Plaintiff alleged the placing of the purple dot on the Department's pin map disclosed the "location" of his "place of residence" *without the reasonable suspicion required by section 290.45,* subdivision (a)(1). He also alleged that the placing of the purple dot on the pin map incorrectly and unlawfully identified him as a serious sex offender.

Plaintiff's complaint pled causes of action for violation of civil rights under Civil Code section 52.1; intentional infliction of emotional distress; negligence and negligence per se; negligent training and supervision; respondeat superior; violation of federal civil rights (42 U.S.C. § 1983; 28 U.S.C. § 1343); injunctive and declaratory relief; and negligent and intentional invasion of privacy.

Rules of Court, rule 22(c).) We note the parties repeatedly refer to the Web site and that plaintiff introduced into evidence a copy of the pin map of his neighborhood.

Defendants moved for summary judgment, arguing inter alia that the pin maps did not violate Megan's Law because they did not identify a sexual offender or disclose his street address—only his general location within the community. Defendants also argued it was proper to classify plaintiff as a serious sex offender. Plaintiff opposed the motion, arguing inter alia that the pin maps did more than disclose his general location but disclosed his address, in which he had a constitutionally protected privacy interest. He also argued it was improper to designate him a serious sex offender, in part because that term is not defined by California's Megan's Law.

At oral argument on the motion, plaintiff clarified that he challenged the pin maps only, not any other Megan's Law program—such as the CD-ROM—administered by the Department.

The trial court granted defendants' summary judgment motion. The court ruled that defendants proffered sufficient evidence to show they had not violated Megan's Law, and that plaintiff had failed to create a triable issue of material fact that defendants had violated section 290.45 "by disclosing specific information without a reasonable suspicion." The court also found that "the pin map on the City of Fremont's Web site does not disclose [plaintiff's] address or any other private information concerning [plaintiff], and therefore does not violate [plaintiff's] right of privacy."[6]

## III. DISCUSSION

■ We review the grant of summary judgment de novo. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766].) A defendant moving for summary judgment bears the initial burden of showing that one or more elements of a cause of action cannot be established, or that there is a complete defense to the cause of action. Once this burden is met, the burden shifts to the plaintiff to show that there is a triable issue of material fact as to the cause of action, supported by reference to specific facts and not mere allegations of the pleadings. (Code Civ. Proc., § 437c, subd. (p)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 [107 Cal.Rptr.2d 841, 24 P.3d 493]; *Brizuela v. CalFarm Ins. Co.* (2004) 116 Cal.App.4th 578, 586 [10 Cal.Rptr.3d 661].) ■ And we review de novo a question of statutory interpretation. (*Argaman v. Ratan* (1999) 73 Cal.App.4th 1173, 1176 [86 Cal.Rptr.2d 917].)

---

[6] The trial court noted it had considered all the elements of every cause of action alleged by plaintiff, but that the same evidence was proffered in support of and in opposition to each one.

The court also granted summary judgment as to four Fremont police officers who were also sued by plaintiff, on the ground that it was undisputed the four officers "had no involvement in the acts alleged to have injured" plaintiff.

Plaintiff contends the pin map disclosed his address in violation of Megan's Law, and thus violated his right to privacy under the federal and state Constitutions. We disagree for the following reasons.

We need not review the elements of the numerous causes of action pled in plaintiff's complaint. As the trial court noted (see fn. 6, *ante*) all causes of action are based on the same evidence and on the same factual predicate: plaintiff's claim that the pin maps disclose the addresses of sex offenders. This factual predicate is undisputedly false.

The pin maps do not identify a sex offender by name or any other personal characteristic, and do not disclose a sex offender's address. Plaintiff does not meaningfully dispute the evidence presented by defendants on this factual issue. Moreover, the Department's Web site depicts pin maps that provide only the general location of a sex offender's residence within an area of the community.

Plaintiff's claim that the maps do disclose addresses is not based on a dispute of fact but on a fundamentally flawed interpretation of statutory language. Because Megan's Law sometimes refers to "address" and at other times refers to "street address," plaintiff argues there must be a distinction between the two terms. He seems to argue that "address" is more general than "street address," and so must mean "location."

We do not accept plaintiff's distinction between the two terms. "The fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.]" (*O'Kane v. Irvine* (1996) 47 Cal.App.4th 207, 211 [54 Cal.Rptr.2d 549].) "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning. [Citations.]" (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) And statutory language must be viewed in context, " '[k]eeping in mind the nature and obvious purpose of the statute where they appear.' " (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224], quoting *Johnstone v. Richardson* (1951) 103 Cal.App.2d 41, 46 [229 P.2d 9].)

■ By any reasonable and commonsense view, given the context of the statute and the legislative intent behind it, the terms "address" and "street address" mean the same thing. Not every variation in phraseology in a statute is meant to draw a distinction between two different meanings. Here there is no reason to assume the Legislature meant one thing by "address" and another by "street address."

■ "Address" in the context of the statutory language does not mean "location." By disclosing only a sex offender's general location, the pin maps

do not violate Megan's Law. The pin maps are essentially little more than visual depictions of the general location of sex offenders. The statutory framework of Megan's Law does not suggest that this type of generalized, nonidentifying information is precluded. Any more specific information, including information which does in fact identify the sex offender, can only be disclosed under the specific screening mechanisms set forth in the provisions concerning the 900 number and CD-ROM (§ 290.4, subd. (a)(2), (3), (4)) and the provisions governing reasonable suspicion of risk and high-risk sex offenders (§ 290.45, subds. (a) & (b)).

The pin maps simply provide a readily accessible means for a parent or other concerned member of the public to learn whether a sex offender resides in the general area where the member of the public lives or sends their child to school. Given the serious public interest in protecting the public, especially children, from sex offenders, the use of the pin maps in no way violates the letter or the spirit of Megan's Law.

█ And the disclosure of general location does not violate a sex offender's right to privacy. There is no federal constitutional right to privacy in the general location of one's residence, which is not the sort of information that is considered private. (See *Russell v. Gregoire* (9th Cir. 1997) 124 F.3d 1079, 1094; *Johnson v. Sawyer* (5th Cir. 1995) 47 F.3d 716, 732–733 [even street address not "private" under common law].)

█ Even if the pin maps did disclose his street address, plaintiff could not show a violation of his right to privacy. Informational privacy rights are not absolute, and may bow to a legitimate state interest. (*Planned Parenthood of Southern Arizona v. Lawall* (9th Cir. 2002) 307 F.3d 783, 790; *In re Crawford* (9th Cir. 1999) 194 F.3d 954, 958–959.) While some courts have found a "nontrivial" privacy interest in a sex offender's street address (*A.A., supra,* 341 F.3d at p. 213; *Paul P. v. Verniero* (3rd Cir. 1999) 170 F.3d 396, 404), any such interest "is substantially outweighed by the State's interest in expanding the reach of its notification to protect additional members of the public." (*A.A., supra,* 341 F.3d at p. 213; accord, *Doe v. Poritz* (1995) 142 N.J. 1 [662 A.2d 367, 408–413] [public interest in disclosure of sex offender's address outweighs any privacy interest in the address].)

In reaching this conclusion the Third Circuit in *A.A.* aptly referred to the opinion of the United States Supreme Court in *Smith.* In that case the

high court upheld Alaska's Megan's Law against an ex post facto challenge, finding that the law was nonpunitive. (*Smith, supra,* 538 U.S. at pp. 90–91, 95–96, 105–106.) In so doing the court emphasized the protective purpose, and legitimate state interest, of informational disclosure under a Megan's Law.

After discussing early forms of colonial punishment meant to inflict disgrace, such as public whipping or branding with a letter of the alphabet signifying one's crime (*Smith, supra,* 538 U.S. at pp. 97–98), the court compared such punishments with Megan's Law: "The stigma of Alaska's Megan's Law results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment. . . . In contrast to the colonial shaming punishments . . . the State does not make the publicity and the resulting stigma an integral part of the objective of the [Megan's Law] regulatory scheme." (*Smith, supra,* 538 U.S. at pp. 98–99.)

And it does not matter that information disclosure has evolved from the town crier to the computer. "The fact that Alaska posts the information on the Internet does not alter our conclusion. It must be acknowledged that notice of a criminal conviction subjects the offender to public shame, the humiliation increasing in proportion to the extent of the publicity. And the geographic reach of the Internet is greater than anything which could have been designed in colonial times. These facts do not render Internet notification punitive. The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation." (*Smith, supra,* 538 U.S. at p. 99.)

In other words, Megan's Law is not a scarlet letter of derision but a red flag of warning.

Neither does one have a right of privacy under the California Constitution in the general location of one's residence. Such essentially public information is not surrounded by a legally protected privacy interest

within the meaning of *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 39–40 [26 Cal.Rptr.2d 834, 865 P.2d 633] (*Hill*), the polestar of privacy cases. A person's general location is not the type of core value, informational privacy explicated in *Hill.* (*Id.,* at p. 35.)

Finally, plaintiff contends that the placing of the purple dot on the pin map improperly identified him as a serious sex offender, and places him in a false light—an actionable invasion of privacy. There are two flaws in this argument.

First, the pin map does not *identify* plaintiff as a sex offender of any classification. It simply portrays the general location of his residence with a colored dot and does not identify him by name.

Second, plaintiff seems to complain that the term "serious sex offender" is not defined by California's Megan's Law and is thus an improper, and perhaps unauthorized, term. But the generic term "serious offender" has been in wide usage in many contexts for many years. The more specific "serious sex offender" is mentioned twice in the Megan's Law preamble, and is clearly intended by the Legislature to be a major category of sex offender, along with "high risk." The Attorney General, who is charged with implementing Megan's Law statewide, has carried out that legislative intent by comprehensively defining "serious sex offender" consistent with the purpose of the statute.

Plaintiff cannot complain that "serious sex offender" is some sort of misnomer or otherwise improper term.

We conclude the trial court properly granted defendants' motion for summary judgment. In light of this conclusion, we need not discuss any issue of immunity.[7]

We close with an observation. The Legislature has crafted a disclosure system that strikes a balance between the rights of sex offenders, as diminished by their reduced expectation of privacy, against the rights of the public—including and especially children—to be protected from sexual victimization. California's Megan's Law strikes an appropriate balance, guards against inappropriate informational disclosure with criminal sanctions, and—importantly—helps protect the public from sex offenders.

---

[7] We do note the trial court did not abuse its discretion by denying plaintiff's motion for sanctions under Code of Civil Procedure section 437c, subdivision (j).

## IV. DISPOSITION

The summary judgment is affirmed.

Stein, J., and Swager, J., concurred.

A petition for a rehearing was denied July 9, 2004, and appellant's petition for review by the Supreme Court was denied September 15, 2004.