Filed 1/26/17  Certified for publication 2/15/17 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOHN DOE et al., | D069411 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2015-00022295-CU-CR-CTL) |
| STATE OF CALIFORNIA, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Timothy Taylor, Judge.  Affirmed.

Casey, Gerry, Schenk, Francavilla, Blatt & Penfield; David S. Casey, Jr., Thomas D. Penfield, Jeremy Robinson and Adam Levine for Plaintiffs and Appellants.

Kamala D. Harris, Attorney General, Kristin G. Hogue, Assistant Attorney General, Richard F. Wolfe and Lisa L. Freund, Deputy Attorneys General for Defendant and Respondent.

Plaintiffs John and Jane Doe appeal from an order granting the State of California Department of Justice's[1] special motion to strike under the anti-SLAPP statute (Code of Civ. Proc., § 425.16).[2] In their lawsuit, the Does allege civil rights violations (Civ. Code, § 52.1 [Bane Act]), negligence, false/wrongful arrest, defamation, and loss of consortium, against the State as well as the City and County of San Diego. Over many years, State agents allegedly caused John Doe to register as a sex offender through threats of enforcement, maintained him on California's sex offender registry, and publicly disseminated his name as a registered sex offender, including via the Megan's Law Web site. In 2014, John was arrested and charged with failing to register as a sex offender. Subsequently, John allegedly determined for the first time that he was not required to register as a sex offender because his prior sex offense convictions had been reversed on appeal.

The State DOJ contends the Does' causes of action arose from protected activity under section 425.16 and the Does did not show a probability of prevailing. We agree. As alleged, State agents' threats to arrest/prosecute John, collection of his information, and communications with local law enforcement and the public regarding John's status as a registered sex offender, involved and furthered protected speech and petitioning activity. The protected activity also involved public issues or issues of public interest.

---

[1] The married plaintiffs sued the State of California (State) under fictitious identities. The State Department of Justice (State DOJ) responded on the State's behalf.

[2] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure. SLAPP is an acronym for strategic lawsuit against public participation. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109 & fn. 1.)

(See *Cross v. Cooper* (2011) 197 Cal.App.4th 357, 377 (*Cross*) [discussing a "strong and widespread public interest in knowing the location of registered sex offenders"].)  For reasons we will discuss, the Does did not show a probability of prevailing on their causes of action.  Accordingly, the trial court properly granted the special motion to strike, and we affirm the court's order.

FACTUAL AND PROCEDURAL BACKGROUND

*State Agents Inform John of Sex Offender Registration Requirements*

In 1981, John was arrested and charged with forcible rape and forcible oral copulation (Pen. Code, §§ 261, subd. (a)(2), 288a, subd. (c)).  The following year, a jury convicted him of the charged offenses.  In 1983, the court of appeal reversed the convictions based on jury instruction errors.  Later the same year, John was released from prison, and the State DOJ allegedly informed him that he must register as a sex offender and required him to sign a registration form.  In 1984, John was retried and convicted a second time by a jury of the same offenses, which he appealed.  The State DOJ again allegedly informed John that he must register as a sex offender and required him to sign a registration form for a change of residence.  In 1985, the court of appeal reversed John's second conviction based on the prosecution's destruction of material evidence and instructional error.  On remand, the superior court granted John's unopposed motion to dismiss the information under Penal Code section 1385.  John was not at the dismissal hearing and was allegedly not informed or aware the charges against him were dismissed.

*John's Ongoing Registration Based on State DOJ's Threats of Enforcement*

3

In 1988, John and Jane got married, and in 1989, they moved to a permanent residence in San Diego. In January 1995, John registered with the San Diego police department (SDPD) as a sex offender, allegedly based in part on what he had been told by the State DOJ. In April 1995, the California Attorney General's office sent a letter to the SDPD, advising that John may be living in the SDPD's jurisdiction and that the SDPD should take "whatever action [it] deem[ed] necessary" to ensure registration compliance by John. The Attorney General's office enclosed a copy of John's sex offender registration form from 1983. In the years that followed, John continued to register each year around the time of his birthday, acknowledging his duty to register and to "know the registration requirements." As alleged, State agents continued to threaten prosecution and/or his arrest, maintain John's information in the sex offender registration system, and publicly disseminate John's status as a registered sex offender, all of which caused damages to him and Jane.

*SDPD Arrests John, Who Determines He is Not Required to Register as a Sex Offender*

In August 2014, the SDPD concluded John was in violation of his registration requirement. Officers went to the Does' home to look for him, but John was not home at the time. The next day, John went to the police station, and he was arrested, jailed, and charged with failing to register as a sex offender by SDPD and/or the San Diego County District Attorney's office. A public defender researched John's criminal records and determined that John was under no obligation to register as a sex offender, since the time when his last sex offense conviction was reversed. The court granted John's motion for a

4

finding of factual innocence and sealing and destruction of arrest records, and John's name was removed from the official sex offender registry.

*Proceedings in Superior Court*

In June 2015, the Does filed their complaint against the State, the County of San Diego (County), the City of San Diego (City), and "Doe" defendants. In relevant part, the complaint alleges causes of action against the State, County, and City for: (A) civil rights violations under the Bane Act (Civ. Code, § 52.1) (causes of action 6-9); (B) negligence and vicarious liability under Government Code section 815.2 (cause of action 10); (C) false and wrongful imprisonment (cause of action 11); (D) defamation per se (cause of action 12); and (E) loss of consortium (cause of action 13).

On behalf of the State, the State DOJ filed a special motion to strike under section 425.16. The State DOJ argued the complaint arose from protected activity and the Does could not prevail because: (1) the State was immune under Government Code sections 815.2 and 821.6 for claims based on threats of prosecution and investigatory activities; (2) the Does' publication-based claims were barred by the litigation privilege (Civ. Code, § 47, subd. (b)); and (3) the Does had not sufficiently alleged the required element of "threat, intimidation, or coercion" to state a Bane Act claim. Furthermore, the DOJ pointed out that the Does had not pled the State was involved in the physical act of arresting John; rather, the State's alleged involvement was in threatening prosecution and relaying sex offender information to the SDPD.

5

The Does opposed the motion to strike. They argued their causes of action did not arise from protected activity because the DOJ's actions were illegal as a matter of law under *Flatley v. Mauro* (2006) 39 Cal.4th 299, 305. Their remaining arguments related to their probability of prevailing on the claims. In support of their opposition, the Does submitted a number of exhibits, including court documents showing the reversal of John's sexual offense convictions, sex offender registration forms, letters from the Attorney General's office, and other police or criminal records.

In October 2015, the trial court heard oral argument on the State DOJ's special motion to strike. Regarding whether the causes of action arose from protected activity, the Does' counsel agreed with the court that, because the anti-SLAPP statute had been broadly construed under case law, the plaintiffs "didn't really make an opposition to [prong one]" and "there doesn't really seem to be an issue about that." Counsel further agreed the Does were "essentially, conceding Prong [One]," except they maintained the State DOJ had engaged in illegal activities. The court went on to hear arguments regarding the proper procedural way to analyze an anti-SLAPP motion and the Does' probability of prevailing on their claims. The court confirmed its tentative ruling to grant the State DOJ's special motion to strike.

The Does filed a timely notice of appeal.

## DISCUSSION

A. *The Anti-SLAPP Statute and Standard of Review*

Under section 425.16, subdivision (b)(1), a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free

6

speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

"[A] special motion to strike under section 425.16 involves a two-step process. First, the moving defendant must make a prima facie showing 'that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute.' [Citation.] If the defendant makes this initial showing of protected activity, the burden shifts to the plaintiff at the second step to establish a probability it will prevail on the claim. [Citation.] The plaintiff need only state and substantiate a legally sufficient claim. [Citation.] The plaintiff's evidence is accepted as true; the defendant's evidence is evaluated to determine if it defeats the plaintiff's showing as a matter of law." (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 420 (*Vasquez*).)

Subdivision (e) of section 425.16 provides that an "act in furtherance of a person's right of petition or free speech" includes "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection

7

with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

We review independently whether a defendant showed a claim arose from protected activity within the meaning of the anti-SLAPP statute and, if so, whether the plaintiff showed a probability of prevailing on that claim. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269 fn. 3.)

B.      *The State Was Not Categorically Barred from Filing an Anti-SLAPP Motion*

For the first time on appeal, the Does contend that the State, as a governmental entity, is not a "person" under section 425.16, subdivision (b)(1), and is not entitled to invoke the protection of the anti-SLAPP statute. They argue that "person" is not defined to include public entities and there is no private analogue to the State's activities.

We conclude the State, through the State DOJ, was entitled to file an anti-SLAPP motion. Contrary to the Does' position, the statutory interpretation issue is not one of first impression. After analyzing the statute's language and legislative history, our Supreme Court held that "section 425.16 may not be interpreted to exclude governmental entities and public officials from its potential protection." (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 19 (*Vargas*).) "[A] lawsuit against a public entity that arises from its statements or actions is potentially subject to the anti-SLAPP statute[.]" (*Ibid.*) The Legislature, in enacting the anti-SLAPP statute, was concerned about "the potential chilling effect that abusive lawsuits may have on statements relating to a public issue or a matter of public interest . . . by public officials or employees acting in their official

8

capacity." (*Id.* at pp. 18-19.) We discuss in section C., *infra*, that the protected activity related to public issues.

Moreover, numerous courts, both before and after the *Vargas* decision, have concluded that public entities are not categorically precluded from seeking protection under the anti-SLAPP statute. (E.g., *Bradbury v. Superior Court of Ventura County* (1996) 49 Cal.App.4th 1108, 1116 [district attorney's report]; *Schaffer v. City and County of San Francisco* (2008) 168 Cal.App.4th 992, 1003-1004 [police officers' official statements]; *Maranatha Corrections, LLC v. Department of Corrections and Rehabilitation* (2008) 158 Cal.App.4th 1075, 1080 [applying anti-SLAPP protection to "a statutorily created department within the executive branch of state government"]; *Squires v. City of Eureka* (2014) 231 Cal.App.4th 577, 582 [applying anti-SLAPP protection to City of Eureka's investigation and prosecution for building code violations].)

We are not persuaded by the Does' argument that the anti-SLAPP statute does not apply in this case because there is no private analogue to the State's activities. The State DOJ notifies and informs the public of registered sex offenders. (See *Fredenburg v. City of Fremont* (2004) 119 Cal.App.4th 408, 413 ["California's Megan's Law . . . is a scheme of detailed provisions for the collection and limited disclosure of information regarding sex offenders who are required to register by Penal Code section 290."].) The State DOJ's role is comparable to a private employment screening business that collects data on potential employees and republishes the data in the form of background check reports. (See *Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644,

1649-1650 (*Mendoza*).) "[P]roviding employment-screening reports is a constitutionally founded, protected activity within the meaning of the anti-SLAPP statute." (*Id.* at p. 1653.) Likewise, disclosing a person's sex offender registration is protected speech under the anti-SLAPP statute. (E.g., *Cross, supra,* 197 Cal.App.4th at p. 376.) The State DOJ was not categorically barred from filing an anti-SLAPP motion.

C.    *The Causes of Action Arose from Protected Activity*

We turn to the Does' contention that the gravamen of their claims do not involve protected speech or petitioning activity. They characterize the State's injurious conduct as wrongful coercion and "forcing [John] to register" as a sex offender.

For purposes of the "prong one" analysis, we do not consider the merits of the State agents' statements or conduct; suffice to say, the State disputes liability and contends that its agents acted lawfully. (See *Mendoza, supra,* 182 Cal.App.4th at p. 1653; *City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 371.) Based on our review of the record, State agents engaged in the following allegedly wrongful acts: informed John of his duty to register as a sex offender; included his information in California's sex offender registry; communicated with local police regarding John's potential failure to register and/or communicated directly with John regarding the same; and disseminated his registration as a sex offender. The Does do not allege that any State agent ever physically forced John to register as a sex offender.

We conclude the Does' causes of action arose from protected activity. The State DOJ was not required to establish that the Does harbored an intent to chill protected activity. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 65.) The

10

Does' claims are plainly based on the statements of State agents in connection with an issue being reviewed by an executive or judicial body, or as part of official proceedings. (See, e.g., Pen. Code, § 290.017, subd. (a) ["Any person who is released, discharged, or paroled from a jail . . . who is required to register pursuant to the [Sex Offender Registration] Act, shall . . . be informed of his or her duty to register . . . and the official shall require the person to read and sign any form that may be required by the [State DOJ] . . . ."].) John's sex offense proceedings triggered a State official's duty to inform him of the registration requirement. The State DOJ's continuous communications and maintenance of his records, through letters, forms, and the like, either arose from those initial proceedings or were connected to issues under periodic review by an executive body. (See *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 877 [under Penal Code, § 290, conviction of an enumerated offense imposes on each convicted person a lifelong obligation to register].)

Additionally, category four of the anti-SLAPP statute protects "any other *conduct* in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e), italics added.) The last catch-all category is not limited to the exercise of a person's right of free speech, but to all conduct in furtherance of the exercise of the right of free speech in connection with a public issue. "*Furtherance* means *helping to advance, assisting*." (*Lieberman v. KCOP Television, Inc.* (2003) 110 Cal.App.4th 156, 166.)

11

We have no doubt the State DOJ's alleged statements and conduct were connected to "a public issue or an issue of public interest." The State's activities were undertaken by public officials and public employees acting on the Attorney General's behalf. Those State officials patently communicate a message regarding the risk that sex offenders pose in committing further offenses after they are released from prison and the need for the public to protect themselves. (See *Cross, supra,* 197 Cal.App.4th at p. 376.) Reducing recidivism and protecting the public from sexual predators, including disclosing the identities of registered sex offenders, are "public issues or an issue of public interest." (E.g., *Id.* at pp. 374-377 [summarizing cases]; *Mendoza, supra,* 182 Cal.App.4th at p. 1653 ["[T]he Legislature . . . issued several findings which openly expressed the public's strong interest in the dissemination of information regarding registered sex offenders."].)

We are satisfied the State properly invoked the anti-SLAPP statute because the Does' claims arose from State agents' speech and petitioning activity regarding public issues, the State did not concede that the activity was illegal, and the evidence did not conclusively establish that the activity was illegal.

D.      *The Does Did Not Show a Probability of Prevailing on Their Claims*

When a defendant makes the threshold showing that a cause of action arises out of the defendant's protected conduct, the anti-SLAPP statute affords the defendant the opportunity, at the earliest stages of litigation, to have the claim stricken if the plaintiff is unable to demonstrate both that the claim is legally sufficient and that there is sufficient evidence to establish a prima facie case with respect to the claim. (*Taus v. Loftus* (2007)

12

40 Cal.4th 683, 714.)  We turn now to whether the Does met their burden of demonstrating a probability of prevailing on their claims.

1.     *Civil rights violations under the Bane Act (Civ. Code, § 52.1)*

In causes of action 6-9 of the complaint, the Does summarily allege that State agents used "threat, intimidation, and/or coercion" when they classified him as a sex offender, compelled him to register, and threatened criminal prosecution.  Their conduct allegedly violated John's constitutional rights to be free from unwarranted governmental restrictions, unjustified threats of criminal prosecution, and unjustified bodily restraint. The Does submitted as evidence the State DOJ's letters, forms, and record of John's inclusion in the sex offender registry.  The Does conceded below that State agents did not physically arrest John in 2014.

Civil Code section 52.1 provides in part:

> "(a) If a person or persons, whether or not acting under color of law, *interferes by threat, intimidation, or coercion*, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured . . . . [¶] (b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages . . . ."  (Italics added.)

13

To prevail on a cause of action under Civil Code section 52.1, the plaintiff must show that the defendant interfered with or attempted to interfere with the plaintiff's legal right by threatening or committing violent acts. (*Austin B. v. Escondido Union School District* (2007) 149 Cal.App.4th 860, 881-882; see generally *Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 334.) Coercion inherent in the alleged constitutional violation, i.e., an overdetention in jail, is insufficient to meet the statutory requirement of " 'threat, intimidation, or coercion.' " (*Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 959.) The statute requires a showing of threatening conduct independent from the alleged interference or violation of a civil right. (*Ibid.;* see also *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 66 ["There are two distinct elements for a [Civil Code] section 52.1 cause of action."].) " '[A] wrongful arrest and detention, without more, cannot constitute "force, intimidation, or coercion" for purposes of section 52.1.' " (*Shoyoye*, at p. 960.)

Here, assuming agents of the State DOJ threatened to arrest/prosecute John if he failed to register as a sex offender, the Does did not allege those agents engaged in independently threatening (or intimidating, coercive) conduct apart from the threats to arrest/prosecute him. Moreover, the evidence shows that John could have determined his legal duties regarding registration as a sex offender; State agents did nothing to prevent him from exercising his legal rights. Under the circumstances, the State DOJ's sharing of John's information with local law enforcement does not constitute " 'threat, intimidation, or coercion' " for purposes of Civil Code section 52.1. Accordingly, the Does have not established a probability of prevailing on their Bane Act claims.

14

2.      *Negligence, false/wrongful imprisonment, and defamation*

Under cause of action 10, the Does contend that State agents were negligent in maintaining the sex offender registration system, in failing to determine whether John was legally obligated to register, and essentially, in continuing to include his information in the system. Under cause of action 11, the Does contend that State agents' maintenance of the sex offender registration system resulted in John's wrongful arrest even if they did not physically arrest him.[3] Finally, under cause of action 12, the Does allege that State agents defamed John by publishing his registered sex offender information.

The State argues that the Does failed to state a claim for relief because the State was immune from liability under Government Code sections 815.2 and 821.6. Specifically, the State DOJ argues that its agents were engaged in prosecutorial activities within the scope of their employment. We agree with the State that the Does failed to show a probability of prevailing on their claims.

Government Code section 821.6 provides that a "public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." "California courts construe section 821.6 broadly in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits." (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th

---

[3]      The arrest and investigator's report submitted by the Does show that SDPD officers analyzed John's records and made the decision to arrest him. Thus, the State's alleged role was limited to maintaining John's registration information.

15

1033, 1048 (*Gillian*); *Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1292 [immunity statute is given an " 'expansive interpretation' " in order to best further its rationale].)

Courts have long held that acts undertaken in the course of an investigation or in preparation for instituting a judicial proceeding cannot give rise to liability, even if no proceeding is ultimately instituted. (E.g., *Gillian, supra,* 147 Cal.App.4th at p. 1048; *Richardson-Tunnell v. School Insurance Program for Employees (SIPE)* (2007) 157 Cal.App.4th 1056, 1062.) "When the duty to investigate crime and to institute criminal proceedings is lodged with any public officer, it is for the best interests of the community as a whole that he be protected from harassment in the performance of that duty. The efficient functioning of our system of law enforcement is dependent largely upon the investigation of crime and the accusation of offenders by properly trained officers. A breakdown of this system at the investigative or accusatory level would wreak untold harm." (*White v. Towers* (1951) 37 Cal.2d 727, 729-30 [upholding immunity to malicious prosecution claim].) The immunity under Government Code section 821.6 extends to intentional tortious conduct, including claims of defamation. (*Gillian*, *supra*, at p. 1048.)

There is no dispute here that State agents' activities were conducted within the scope of their employment. The Does argue, however, that John's sex offense prosecutions ended in 1984 and that the agents' subsequent conduct was not immunized.

The Does' arguments are misplaced. The maintenance of a sex offender registration system was "essential" (*Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1436) to instituting or threatening to institute a judicial proceeding

16

against John for failing to register as a sex offender. Indeed, if sex offender registrations were not tracked, we are hard pressed to see how prosecutions for failing to register would be possible. In addition, an important goal of maintaining and publishing sex offender information is to prevent crimes and to facilitate investigations. (See *Wright v. Superior Court* (1997) 15 Cal.4th 521, 527 (*Wright*) [discussing that "the Legislature perceives that sex offenders pose a 'continuing threat to society'. . . and require constant vigilance"].) Given the purpose of Government Code section 821.6, we conclude that State agents were immune from liability caused by their alleged negligent or tortious conduct. The State could not be held vicariously liable. (Gov. Code, § 815.2, subd. (b) ["[A] public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."].)

The Does did not establish a probability of prevailing on their claims for another reason. Fundamentally, the statutory duty to register as a sex offender or determine whether to continue registering as a sex offender, lied with John, not the State. (*Wright, supra,* 15 Cal.4th at p. 528 [statute imposes continuing duty to register on sex offender].) The record supports that John could have taken steps to determine his legal obligations because the necessary information was accessible and no State agent ever prevented him from doing so. John was therefore estopped from complaining about the collection and

17

publication of his information since he was the one to continue registering as a sex offender.  The trial court properly struck the Does' claims against the State.[4]

3.  *Loss of consortium*

Under cause of action 13, Jane alleges loss of consortium (e.g., loss of companionship and care) caused by the State's conduct toward her spouse, John.  Jane would not prevail on her claim for the same reasons we have discussed.

## DISPOSITION

The trial court's order granting the State's anti-SLAPP motion is affirmed.  The State is awarded its costs of appeal.

BENKE, Acting P. J.

WE CONCUR:


HALLER, J.


IRION, J.

---

[4]     Because of our conclusions, we need not decide whether the Does' claims were also barred by the litigation privilege, Civil Code section 47.

18

Filed 2/15/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOHN DOE et al., | D069411 |
| Plaintiffs and Appellants, | (Super. Ct. No. 37-2015-00022295-CU-CR-CTL) |
| v. | |
| STATE OF CALIFORNIA, | ORDER GRANTING PUBLICATION |
| Defendant and Respondent. | |

THE COURT:

The opinion in this case filed January 26, 2017, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), respondent's request pursuant to California Rules of Court, rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

BENKE, Acting P. J.

Copies to: All parties