[No. B214653. Second Dist., Div. Eight. Mar. 23, 2010.]

WILLIAM MENDOZA, Plaintiff and Appellant, v.
ADP SCREENING AND SELECTION SERVICES, INC., Defendant and
Respondent.

## COUNSEL

Bohm, Matsen, Kegel & Aguilera, Craig A. Kegel and A. Eric Aguilera for Plaintiff and Appellant.

Jones Day, Deborah C. Saxe and Daphne P. Bishop for Defendant and Respondent.

## OPINION

**BIGELOW, P. J.**—The statute governing the "Megan's Law" Web site (MLW) includes a provision prohibiting the "use of any information that is disclosed [on the MLW] . . . for purposes relating to . . . [¶] . . . [¶] . . . [e]mployment," and a provision that "[a]ny use" of information disclosed on the MLW for such a purpose "shall make the user liable for . . . actual damages, . . . and attorney's fees, exemplary damages, or a civil penalty not exceeding [$25,000]." (Pen. Code, § 290.46, subd. (*l*)(2)(E), (4)(A).)

The anti-SLAPP (strategic lawsuit against public participation) statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of . . . free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).)

 The appeal before us today arises from a case in which the interests protected by the MLW statute meet face-to-face with the interests protected by the anti-SLAPP statute. The appeal presents us with two primary questions. First, does an employment-screening business have a *constitutional* free speech right—as such rights are defined in the anti-SLAPP statute—to republish information disclosed on the MLW to the business's clients, notwithstanding the *statutory* prohibitions on the use of such information? Second, in the event such a constitutional free speech right exists, did the trial court properly grant the business's anti-SLAPP motion to strike an MLW-based complaint for damages on the ground that plaintiff could not show as *a matter of law* a probability of prevailing?

We answer both questions, yes. The order dismissing plaintiff's MLW-based complaint under the anti-SLAPP statute is affirmed.

## FACTS

*The Complaint*

In November 2008, William Mendoza filed a first amended complaint (FAC) for damages against ADP Screening and Selection Services, Inc. (SASS),[1] alleging a cause of action for violations of Penal Code sections 290.4 and 290.46, a cause of action for violations of Civil Code section 1786.20, subdivision (c), of the Investigative Consumer Reporting Agencies Act (ICRAA; Civ. Code, § 1786 et seq.), and a cause of action for declaratory relief of his rights under Penal Code sections 290.4 and 290.46. The FAC alleged the following facts:

In August 2007, Mendoza filled out an application for employment. (He does not allege with whom, or for what type of job, or that he was qualified for the position.) In September 2007, SASS conducted a preemployment background check on Mendoza. As part of its background check, SASS "accessed [the MLW] for the sole purpose of denying employment to individuals who were registered sex offenders." The FAC does not allege whether Mendoza is a registered sex offender. The FAC does not expressly allege that information regarding Mendoza was disclosed on the MLW, but that factual allegation is implicit. The FAC does not expressly allege that Mendoza's prospective employer decided not to hire him based on information disclosed on the MLW, but that factual allegation, too, is implicit. The FAC alleged that Mendoza "suffered irreparable harm and damages as a result of [SASS]'s unlawful . . . conduct," but does not expressly allege facts showing the nature of those damages or causation.[2]

*The Anti-SLAPP Motion*

SASS filed a special motion to strike Mendoza's FAC pursuant to the anti-SLAPP statute. SASS's motion argued that Mendoza's claims arose from the company's actions in furtherance of its constitutional free speech rights. In other words, SASS argued that it had a constitutional free speech right to

---

[1] Mendoza's pleading includes class action allegations, but the class action aspects of his case are not involved in the current appeal.

[2] The MLW statute provides that any person "aggrieved by the misuse" of information available on the MLW "is authorized to bring a civil action . . . requesting preventive relief, including an application for a permanent or temporary injunction . . ." (Pen. Code, § 290.46, subd. (*l*)(4)(B)), but Mendoza's FAC did not include any allegations in support of injunctive relief, nor did it include a prayer for such relief.

republish information on the MLW to its clients. As an evidentiary matter, SASS's motion essentially conceded that it accessed the MLW, compiled information disclosed on the MLW, and provided the information for a fee to Mendoza's prospective employer, an SASS client. SASS argued that Mendoza could not prevail on his first cause of action as a matter of law because SASS had not used any information disclosed on the MLW regarding Mendoza within the meaning of the term "use" found in Penal Code sections 290.4 and 290.46. In other words, SASS argued that compiling and republishing information disclosed on the MLW does not constitute "use" of the information, the inference being that only an employer "uses" such information in the employment context. SASS argued that Mendoza could not prevail on his second cause of action for violation of the ICRAA as a matter of law because SASS's access of the MLW had not violated any federal or state equal employment law or regulation. SASS argued that Mendoza's cause of action for declaratory relief fell with his first two causes of action.

Mendoza opposed SASS's anti-SLAPP motion on three fronts. First, he argued that the anti-SLAPP statute did not apply to SASS's "commercial speech." Second, he argued that his claims against SASS were sufficient to show that he probably would prevail on the MLW-based case. Finally, he requested leave to conduct discovery. On an evidentiary front, Mendoza submitted a declaration in which he set forth the following, admissible, nonconclusory facts:

"2. I applied for employment with a prospective employer. I passed the preliminary review and was selected for further consideration by the prospective employer.

"3. My prospective employer hired SASS for a fee to prepare a . . . report on [me] for employment purposes. I know this because I was told by my prospective employer and I received a copy of the . . . report [prepared by] SASS . . . .

"4. . . . [T]he prospective employer gave me a copy of [SASS's report].

"5. SASS delivered the . . . report to my prospective employer.[3]

"6. SASS's . . . accessing of and use of the information disclosed on the [MLW] has . . . cost[] me gainful employment and the ability to lawfully earn wages, [and] caused me to suffer emotionally, including but not limited to depression."

---

[3] Paragraph 5 of Mendoza's declaration also included the statement that he was denied employment based on the report. However, SASS's objections based on lack of foundation and personal knowledge about the reason for his prospective employer's employment decision were sustained.

*The Trial Court's Decision*

Following a hearing, the trial court entered a minute order granting SASS's special motion to strike Mendoza's complaint under the anti-SLAPP statute. The trial court's statement of decision explained its reasons for granting SASS's motion and dismissing Mendoza's action. The court determined the FAC was subject to the anti-SLAPP statute because the conduct alleged by Mendoza arose in furtherance of SASS's First Amendment rights of commercial speech on a matter of public interest, i.e., the identities of registered sex offenders, and the commercial speech exemption to the anti-SLAPP statute (see Code Civ. Proc., § 425.17, subd. (c)) was inapplicable. The court found Mendoza could not establish a probability that he will prevail on his first count since SASS was not his prospective employer and did not "use" the MLW in violation of Penal Code sections 290.4 and 290.46, but instead simply "disclosed" information it found on the Web site. It further found Mendoza could not establish a probability that he would prevail on his second or third counts for violations of Civil Code section 1786.20, subdivision (c) and Penal Code sections 290.4 and 290.46. Finally, it determined Mendoza did not have good cause to conduct discovery to oppose the motion.

The trial court's statement of decision and order of dismissal included a mandatory award for attorney fees in the amount of $42,593.75 in favor of SASS. (See Code Civ. Proc., § 425.16, subd. (c).)

Mendoza filed a timely notice of appeal.

## DISCUSSION

I. *The Anti-SLAPP Motion Was Properly Granted*

■ The Legislature enacted the anti-SLAPP statute to address the societal ills caused by meritless lawsuits filed primarily to chill a defendant's exercise of First Amendment rights. (Code Civ. Proc., § 425.16, subd. (a).) The statute "requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts [about] which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of . . . free speech under the United States or California Constitution in connection with a public issue . . .' . . . . [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) An appellate

court reviews an order granting an anti-SLAPP motion under a de novo standard. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 [46 Cal.Rptr.3d 638, 139 P.3d 30].) In other words, we employ the same two-pronged procedure as the trial court in determining whether the anti-SLAPP motion was properly granted.

### a. *The Exemption to the Anti-SLAPP Statute Did Not Apply*

Mendoza first contends the order dismissing his case must be reversed because SASS's employment-screening conduct was entirely exempted from the anti-SLAPP statute's purview by Code of Civil Procedure section 425.17, subdivision (c). We disagree.

■ Code of Civil Procedure section 425.17, subdivision (c), provides that the anti-SLAPP statute "does not apply to any cause of action brought against a person primarily engaged in the business of selling . . . services . . . , [and] arising from any statement or conduct by that person if both of the following conditions exist: [¶] (1) The statement or conduct consists of representations of fact *about that person's or a business competitor's business operations, goods or services* . . . . [¶] (2) The intended audience is an actual or potential buyer or customer . . . ." (Italics added.) The plain language of section 425.17, subdivision (c), does not apply to Mendoza's case against SASS because the statements by SASS upon which Mendoza bases his complaint were not made by SASS about its own business or about one of SASS's business competitors, but about Mendoza's presence on the MLW. As we previously commented in another case, the Legislature appears to have enacted section 425.17, subdivision (c), for the purpose of exempting from the reach of the anti-SLAPP statute cases involving comparative advertising by businesses. (See *Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, 491 [72 Cal.Rptr.3d 847].) No such business advertising context is presented by Mendoza's case against SASS.

Code of Civil Procedure section 425.17, subdivision (c), simply does not provide, as Mendoza suggests, that every case arising from statements uttered by a commercial enterprise is exempted from the anti-SLAPP statute's purview.

### b. *Providing Employment-screening Reports Is a "Protected Activity" Within the Meaning of the Anti-SLAPP Statute*

Mendoza next contends the order dismissing his case must be reversed because SASS's employment-screening conduct is not "protected activity" within the meaning of the anti-SLAPP statute. We disagree.

■ Not all speech by a business enterprise constitutes "commercial speech," a term often used in the advertising context. But it is well

recognized that business-entity speakers have a First Amendment right to express themselves on social and political issues. (See, e.g., *First National Bank of Boston v. Bellotti* (1978) 435 U.S. 765 [55 L.Ed.2d 707, 98 S.Ct. 1407].) Our state Supreme Court has recognized such a right, with the proviso that, in making factual representations, a business enterprise "must speak truthfully," or be subject to a cause of action alleging a violation of the state's unfair competition law. (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 946, 960–969 [119 Cal.Rptr.2d 296, 45 P.3d 243].) Regardless of content, however, the protection afforded by the First Amendment is "not limited to those who publish without charge." (*Guglielmi v. Spelling-Goldberg Productions* (1979) 25 Cal.3d 860, 868 [160 Cal.Rptr. 352, 603 P.2d 454] (conc. opn. of Bird, J.).) In other words, speech does not lose its constitutional protection because it is "undertaken for profit," and the fact that a party seeks to make a profit from its speech "is not constitutionally significant." (*Id.* at pp. 868–869.)

■ We agree with the trial court that SASS made its requisite prima facie showing that, in publishing information disclosed on the MLW, it engaged in constitutionally protected speech on a subject of public interest. Indeed, the Legislature, in enacting the statutory scheme establishing the MLW, issued several findings which openly expressed the public's strong interest in the dissemination of information regarding registered sex offenders. (See *Fredenburg v. City of Fremont* (2004) 119 Cal.App.4th 408, 412–413 [14 Cal.Rptr.3d 437].) We are also swayed by the public interest in safe workplaces, and in the liability which may attach to employers who fail to investigate prospective employees where prudence justifies such an investigation. Thus, as a foundational, broad-based proposition, we conclude that providing employment-screening reports is a constitutionally founded, protected activity within the meaning of the anti-SLAPP statute.

To avoid the conclusion that SASS properly sought relief under the anti-SLAPP statute based upon the company's prima facie showing that it had acted in furtherance of its constitutional free speech rights, Mendoza argues SASS's use of information on the MLW was an "illegal" activity. More directly, Mendoza contends his MLW-based claims against SASS are beyond the protections of the anti-SLAPP statute because the company engaged in statutorily prohibited conduct when it accessed the MLW, and sold information disclosed on the MLW to its clients. We understand the gist of Mendoza's argument to be that every violation of a statutory prohibition necessarily removes the violator out from under the protective umbrella of the anti-SLAPP statute. We disagree.

The parties' arguments cite *Flatley v. Mauro* (2006) 39 Cal.4th 299 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*) as the governing law, but disagree on

its meaning. In *Flatley*, the plaintiff, a renowned entertainer, filed an action against an attorney, alleging causes of action for civil extortion, intentional infliction of emotional distress and wrongful interference with economic advantage. All of the plaintiff's causes of action were based on a letter from the lawyer threatening to go public with a rape allegation unless the plaintiff paid a " 'settlement of $100,000,000.00.' " (*Id.* at pp. 305–308, boldface omitted.) The defendant attorney filed an anti-SLAPP motion, which the trial court denied. The Court of Appeal affirmed the order denying the anti-SLAPP motion, holding, as a matter of law, that the attorney's letter "constituted *criminal extortion* and therefore . . . not protected [by the anti-SLAPP statute]." (*Flatley, supra*, at p. 311, italics added.) Having ruled that the anti-SLAPP statute did not apply to protect the attorney's letter, the Court of Appeal "did not address whether [the plaintiff] had demonstrated a probability of prevailing on the merits." (*Flatley, supra*, at p. 311.)

 The Supreme Court affirmed the Court of Appeal's decision, and the following is the relevant rule articulated in *Flatley* for purposes of Mendoza's current case: "[W]here a defendant brings a motion to strike under [the anti-SLAPP statute] based on a claim that the plaintiff's action arises from activity by the defendant in furtherance of the defendant's exercise of protected speech . . . , but either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech . . . was *illegal* as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action. In reaching this conclusion, we emphasize that the question of whether the defendant's underlying conduct was *illegal* as a matter of law is preliminary, and unrelated to the second prong question of whether the plaintiff has demonstrated a probability of prevailing, and [that] the showing required to establish conduct *illegal* as a matter of law—either through [the] defendant's concession or by uncontroverted and conclusive evidence—is not the same showing as the plaintiff's second prong showing of probability of prevailing." (*Flatley, supra*, 39 Cal.4th at p. 320, italics added.)

Our reading of *Flatley* leads us to conclude that the Supreme Court's use of the phrase "illegal" was intended to mean criminal, and not merely violative of a statute. First, the court in *Flatley* discussed the attorney's underlying conduct in the context of the Penal Code's criminalization of extortion. Second, a reading of *Flatley* to push any statutory violation outside the reach of the anti-SLAPP statute would greatly weaken the constitutional interests which the statute is designed to protect. As SASS correctly observes, a plaintiff's complaint *always* alleges a defendant engaged in illegal conduct in that it violated some common law standard of conduct or statutory prohibition, giving rise to liability, and we decline to give plaintiffs a tool for avoiding the application of the anti-SLAPP statute merely by showing any statutory violation.

Mendoza's reliance on *Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2006) 143 Cal.App.4th 1284 [50 Cal.Rptr.3d 27], does not persuade us differently. In *Novartis*, evidence established that the defendant's underlying conduct amounted to a criminal conspiracy to physically attack and terrorize the executives of a biomedical testing laboratory. We agree that such conduct would preclude a defendant from using the anti-SLAPP statute to strike a plaintiff's complaint, but SASS's conduct is not of the same criminal nature.

■ We also reject Mendoza's contention that SASS's conduct was illegal or criminal under Penal Code section 290.46, subdivision (j). That provision of the MLW statute provides that, if a person uses information disclosed on the MLW to commit another crime, the punishment for that other crime is increased by an additional fine, if the other crime is a misdemeanor, and that the punishment for that other crime is increased by a five-year term, if the other crime is a felony. (Pen. Code, § 290.46, subd. (j)(1), (2).) In other words, section 290.46, subdivision (j), is essentially an enhancement statute and does not define a substantive crime. We see no language in the MLW statute which provides that a violation of section 290.46, subdivision (*l*), or any other part of the section, is a misdemeanor or a felony. To the contrary, section 290.46, subdivision (*l*), expressly prescribes *civil* remedies—including actual and exemplary damages, and a civil penalty—for a violation of its provisions.

In the end, we are satisfied that SASS properly invoked the anti-SLAPP statute to challenge Mendoza's complaint because SASS's underlying conduct involved speech activity in furtherance of its First Amendment rights, and SASS did not concede that its underlying conduct was criminal, nor did the evidence conclusively establish that its conduct was criminal.

 c. *Mendoza Did Not Demonstrate He Was Likely to Prevail*

SASS's anti-SLAPP motion argued that Mendoza could not prevail on his first cause of action for violation of Penal Code section 290.46—*as a matter of law*—because SASS had not "used" information disclosed on the MLW. The trial court agreed and so do we.

The relevant portions of Penal Code section 290.46 provide:

"(*l*)(1) A person is authorized to use information disclosed pursuant to this section only to protect a person at risk.

"(2) Except as authorized under paragraph (1) or any other provision of law, use of any information that is disclosed pursuant to this section for purposes relating to any of the following is prohibited:

"(A) Health insurance.

"(B) Insurance.

"(C) Loans.

"(D) Credit.

"(E) Employment.

"(F) Education, scholarships, or fellowships.

"(G) Housing or accommodations.

"(H) Benefits, privileges, or services provided by any business establishment."

■ Mendoza first claims these statutory provisions should be read together to create two independent prerequisites which must be met for a lawful disclosure of MLW information. That is, to disseminate the MLW information it first must be done to protect a person at risk and, second, the information can never be used for any of the listed, prohibited purposes. We disagree. We read these provisions as follows: Penal Code section 290.46, subdivision (*l*)(1) allows disclosure of information from the MLW at any time to protect a person at risk. Subdivision (*l*)(2) also allows disclosure of the MLW information, except for the listed purposes set forth—including prohibiting use for employment purposes.

SASS does not argue it is using the information to protect a specific person at risk. And while a strong argument might be made that employees are persons at risk whom an employer has a duty to protect from a sexually violent predator, SASS was not employing persons to work with Mendoza. Further, as we believe that because SASS did not "use" the information in a manner contemplated by Penal Code section 290.46, subdivision (*l*)(2), Mendoza could not prevail.

Neither the term "use" nor the phrase "purposes relating to employment" is defined in the statute, and the parties have not cited us to any decision by a California state court interpreting these statutory terms. This means we must apply long-standing rules of statutory interpretation to fill in the definitional void.

■ In interpreting a statute, we first look to the language of the statute, giving effect to its "plain meaning" according to its ordinary usage, with

significance given to every word, phrase, and sentence, when possible. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) We must attempt to harmonize all parts of the statute in the context of the statutory framework as a whole, and our interpretation should not render any part of the statute meaningless. (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230–231 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 274 [41 Cal.Rptr.2d 220, 895 P.2d 56].) When the statutory language is clear and unambiguous, there is no need for construction, or to look for indicia of legislative intent, and the statutory analysis ends. (*Mutual Life Ins. Co. v. City of Los Angeles* (1990) 50 Cal.3d 402, 407 [267 Cal.Rptr. 589, 787 P.2d 996].) When, on the other hand, there are two reasonable interpretations, the statutory language is deemed ambiguous, and we must discern the Legislature's intent from other sources than the words of the statute. (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 579 [110 Cal.Rptr.2d 809, 28 P.3d 860].)

Mendoza argues that accessing, compiling, and republishing information disclosed on the MLW to prospective employers, when done for commercial payment, constitutes a "use" of such information for a "purpose relating to employment." SASS argues that a "use" of information disclosed on the MLW for a "purpose relating to employment" only occurs when the information is taken into account by an employer in making an employment decision. In our view, both of these interpretations of the words of the MLW statute are reasonable, meaning we must decide whether the Legislature intended, when it enacted the MLW statute, to create *liability for damages* on the part of an employment-screening business that accesses, compiles and republishes information disclosed on the MLW.[4]

■ Although the legislative history in the record and the parties' briefs are sparse, we are satisfied that the MLW statute is not intended to create *liability for damages* on the part of employment-screening businesses that access, compile and republish information disclosed on the MLW; and that the statutory liability created by the MLW statute should be limited to employers who "use" information disclosed on the MLW as a basis for an employment decision. The MLW statute's genesis can be traced back to the Legislature's enactment of Penal Code former section 290.4 in 1994, which required the Department of Justice (DOJ) to compile and maintain a centralized record of the state's registered sex offenders to be made available to local law enforcement agencies. (Stats. 1994, ch. 867, § 4, p. 4396.) In 1996, the Legislature added language to section 290.4 stating that any person who "copie[d], distribute[d], disclose[d], or receive[d]" any information from DOJ's sex offender records, "except as authorized by law," was "guilty of a

---

[4] As we noted above, Mendoza's FAC does not seek injunctive relief against SASS based upon any alleged "misuse" of information available on the MLW. (See fn. 2, *ante.*)

misdemeanor, punishable by imprisonment in the county jail . . . or by a fine . . . or by both. . . ." (Stats. 1996, ch. 908, § 3, p. 5125.)

By the beginning of this decade, the Legislature was completely rethinking the utility of sex offender information, and, in 2004, the Legislature added the MLW statute to the Penal Code to create the MLW so that the general public could access the DOJ's information on registered sex offenders. (Pen. Code, § 290.46, added by Stats. 2004, ch. 745, § 1.) The 2004 enactment creating the MLW did not, for obvious reasons, include a provision making it unlawful to copy, distribute, disclose or receive information disclosed on the MLW, as was the situation when the Legislature originally enacted section 290.4. A year after it created the MLW, the Legislature amended section 290.4, subdivision (c), to delete its language which had made the copying, distributing, disclosing, or receiving of sex offender information from the DOJ's records a misdemeanor. (Stats. 2005, ch. 722, § 5.)

The historical development of the statutory schemes governing DOJ's sex offender informational records (Pen. Code, § 290.4), and the MLW (Pen. Code, § 290.46), leads us to conclude that the Legislature long recognized a distinction between the "use" of sex offender information, and the "reproducing" or "republishing" of such information. We are satisfied that, in creating statutory liability for the "use" of the information disclosed on the MLW, the Legislature did not intend to extend that liability to persons, including businesses, who merely reproduce or republish such information, without actually acting on the information. For the reasons stated above, we affirm the trial court's conclusion that Mendoza could not show a probability of prevailing—as a matter of law—on his first cause of action against SASS based on any alleged violations of sections 290.4 and 290.46. His cause of action, if any, lies against his prospective employer, and not SASS.

We also affirm the trial court's conclusion that Mendoza could not—as a matter of law—show a probability of prevailing on his second cause of action against SASS for an alleged violation of Civil Code section 1786.20, subdivision (c). Section 1786.20, subdivision (c), provides: "An investigative consumer reporting agency may not make an inquiry for the purpose of preparing an investigative consumer report on a consumer for employment purposes *if the making of the inquiry by an employer or prospective employer of the consumer would violate applicable federal or state equal employment opportunity law or regulation.*" (Italics added.) The fatal element in Mendoza's second cause of action for an alleged violation of section 1786.20, subdivision (c), is his unspoken predicate that his prospective employer's inquiry into whether Mendoza was identified on the MLW somehow violated a *federal or state equal employment opportunity law or regulation.* We agree with the Attorney General's conclusion, apart from Mendoza's current case,

that the prohibition against the use of information disclosed on the MLW does not mean that registered sex offenders are a protected class for purposes of housing discrimination under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; 89 Ops.Cal.Atty.Gen. 85 (2006)), and we see no reason to come to a different conclusion in the employment discrimination context.[5]

## II. *Discovery*

The trial court's decision not to permit Mendoza to conduct discovery was shaped by its conclusions that Mendoza could not show a probability of prevailing as a *matter of law* on his causes of action under Penal Code sections 290.4 and 290.46, and Civil Code section 1786.20, subdivision (c). On appeal, Mendoza offers a one-paragraph argument in which he asserts that discovery may lead him to learn such facts as when, and by what means, SASS accessed the MLW. He does not, however, explain how such discovery would have any relevance or materiality on the question of whether the foundation for the trial court's order in favor of SASS is suspect. We decline to find error on the argument presented by Mendoza.

## III. *SASS Is Entitled to Its Attorney Fees on Appeal*

Code of Civil Procedure section 425.16, subdivision (c), provides: "[A] prevailing defendant on a special motion to strike *shall be entitled* to recover his or her attorney's fees and costs." (Italics added.) There is no so-called "safe harbor" provision where, as in Mendoza's case, arguable issues exist regarding the application of the anti-SLAPP statute. Because a statute authorizing attorney fees at the trial court level includes such fees on appeal unless the statute specifically provides otherwise, section 425.16, subdivision (c), applies when attorney fees and costs are incurred by a defendant on appeal. (See, e.g., *Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260, 287 [105 Cal.Rptr.2d 674].) SASS argues we should award it its attorney fees and costs incurred in responding to Mendoza's appeal. SASS's argument is well taken. On remand, the trial court shall determine SASS's reasonable attorney fees and costs on appeal, and enter an order awarding such fees and costs.

---

[5] Mendoza's opening brief on appeal does not contain any meaningful argument challenging the trial court's decision to strike his third cause of action for declaratory relief, and we presume he concedes that this third cause of action rises or falls with his first and second causes of action.

## DISPOSITION

The order entered on January 9, 2009, dismissing Mendoza's action, is affirmed. Costs on appeal are awarded to SASS.

Rubin, J., and Lichtman, J.,[*] concurred.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.