Filed 11/4/15  Lucas v. Torres CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| LYNETTE LUCAS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>ELEANOR TORRES,<br><br>    Defendant and Respondent. | 2d Civil No. B255705<br>(Super. Ct. No. 56-2013-00440905-<br>CU-DF-VTA)<br>(Ventura County) |

Following her "nonreelection" as a probationary teacher with the El Rio School District (District), appellant Lynette Lucas initiated a recall election to remove respondent Eleanor Torres and others from the District's school board. Torres told a local newspaper reporter that Lucas "was not a tenured teacher and was eliminated due to her performance" and that "[t]he decision was made by management, not the school board."  Claiming the statements are false, Lucas sued Torres for defamation and intentional infliction of emotional distress.

The trial court granted Torres's motion to strike the defamation claim under the anti-strategic lawsuit against public participation (anti-SLAPP) statute,

Code of Civil Procedure section 425.16.[1]  It determined the allegedly defamatory statements arose from protected activity and that Lucas failed to demonstrate the probability of prevailing on her claim.  We affirm.

FACTS AND PROCEDURAL BACKGROUND

In 2012 Lucas was in her second and final year as a probationary teacher with the El Real Elementary School in Oxnard.  Upon the school administration's recommendation, the District's Board of Trustees (Board) voted to non-reelect Lucas and several other probationary teachers for the 2012-2013 school year.  Torres, who was the Board's president, understood Lucas "did not meet expected performance standards to merit re-employment."  The District advised Lucas of this decision on March 9, 2012, and she was released as of July 30, 2012.

In April 2012, Lucas took steps to initiate a recall election to remove Torres and two other board members, Henrietta Macias and Ramon Rodriguez, from their positions as trustees.  Lucas distributed flyers describing the three trustees as dishonest and unethical and inviting the public to demonstrate at the District office.  The Ventura County Star (the Star) newspaper published at least five articles discussing the recall campaign.

In May 2012, the Star published an article stating that Lucas is a District teacher and "vocal critic of the three trustees."  It reported that the grounds for recalling the board members "include accusations that they made secret deals, tried to dismantle successful programs and discriminated against those who disagreed with them."  The Star stated that Lucas "is 'very confident' she can gather enough backing for the recall."  "Voters are not happy the board isn't doing anything for the kids."  Lucas said.  "The district has a long history of craziness."  The Ventura County Reporter similarly reported that Lucas "is a longtime critic of

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

the trustees" and stated she "had canvassed a neighborhood with leaflets calling for recall of 'The Rio Three.'"

The Star published an editorial encouraging the persons behind the recall to reconsider, noting that such efforts were not merited and that it would cause substantial economic costs to the public. Lucas subsequently filed a second notice of intention to circulate a recall petition. Among other things, the notice stated that Torres, Macias and Rodriguez were "bought and paid for by a construction company suing the District," made deals hidden from public scrutiny, displayed favoritism towards allies, failed to address budget issues facing the District, violated state open meeting laws and "failed to lead at a time when courage and leadership [are] most needed."

In July 2012, the Star reported that Lucas faced a tight deadline to submit the signatures necessary to place the recall issue on the November ballot. The article stated: "Lynette Lucas, a Rio school teacher leading the recall, said she might meet the deadline but did not disclose how many signatures she has gathered. [¶] 'It's been easy,' Lucas said about signature-gathering. 'People are fed up with government.'" The article further reported that "Torres rebutted all of the accusations against her and said she's willing to hold a town hall meeting with Lucas to answer the claim. [¶] 'Everything she says is exaggerated or total lies,' Torres said about Lucas. [¶] Torres said she's confident district voters are on her side. [¶] 'If [Lucas] gets enough signatures, and I don't know that she will, and it does go to an election, voters are going to know we have not done anything wrong.'"

Finally, on August 22, 2012, the Star reported that "despite having missed a deadline to submit signatures to hold the recall election," Lucas "is still going forward with the campaign." Identifying Lucas as a *former* teacher at Rio Real Elementary School, the article stated: "Torres said Lucas was not a tenured

3

teacher and was eliminated due to her performance. The decision was made by management, not the school board, Torres said."

Lucas demanded that the Star retract Torres's comments, stating "[t]he truth is that I was a probationary teacher who was non-reelected and that non-reelect was explicitly approved by the school board in a closed session meeting on March 8, 2012, along with other teachers who received the same treatment." The Star declined, explaining "the comments published were an accurate representation of the statements made to our staff writer and properly attributed to the source. As [Ms.] Torres is a member of the [Board], it is reasonable to rely on her statements about district board action."

Lucas, who is self-represented, filed a complaint against Torres for defamation and intentional infliction of emotional distress, alleging the statements about her "elimination" are false. Torres filed an anti-SLAPP motion to strike the defamation claim. Lucas opposed the motion, arguing the statements did not arise from protected activity and that she is likely to prevail on the merits. The trial court granted both the motion and Torres's request for attorney fees. Lucas appeals.[2]

## DISCUSSION

### *The Anti-SLAPP Statute and Standard of Review*

"Section 425.16 provides an expedited procedure for dismissing lawsuits that are filed primarily to inhibit the valid exercise of the constitutionally protected rights of speech or petition. [Citation.]" (*Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1292.) "The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance and prevent meritless litigation designed to chill the exercise of First Amendment rights. (§ 425.16, subd. (a).)"

---

[2] The trial court also granted Torres's motion for judgment on the pleadings as to the cause of action for intentional infliction of emotional distress. That ruling is not before the court in this appeal.

(*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 883.)

To assess whether dismissal is required under section 425.16, the court first must determine if the lawsuit falls within the scope of the anti-SLAPP statute. (*Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1476.) A cause of action is governed by this statute if it arose from activities that were in furtherance of the moving party's free speech or petition rights. (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon Enterprises*).) The moving party bears the burden of demonstrating that a cause of action arose from such protected activity. (*Equilon Enterprises*, at p. 67.) If the moving party meets this burden, the burden shifts to the opposing party to demonstrate "'a probability of prevailing on the claim.'" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).)

The "burden of establishing a probability of prevailing is not high: We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law. [Citation.]" (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699-700.) The plaintiff need only show a "minimum level of legal sufficiency and triability" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 438, fn. 5), or a case of "'minimal merit.'" (*Navellier*, *supra*, 29 Cal.4th at p. 95, fn. 11; *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 824-825, disapproved on another ground as stated in *Equilon Enterprises*, *supra*, 29 Cal.4th at p. 68, fn. 5.)

Our review of the trial court's order on an anti-SLAPP motion is de novo. (*Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1047; *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 214.) If the trial court's decision denying an anti-SLAPP motion is correct on any theory applicable to the case, we may affirm the

5

order regardless of the correctness of the grounds on which the lower court reached its conclusion. (*Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 573.)

*Protected Activity*

Lucas's defamation cause of action is based on allegedly defamatory statements that Torres made to a local newspaper reporter. To establish that the claim arose from protected activity, Torres must show that the statements fall within one of four categories set forth in section 425.16, subdivision (e).[3] Torres contends the challenged speech is within the purview of section 425.16, subdivision (e)(4), as it involves "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (See *Mendoza v. Hamzeh* (2013) 215 Cal.App.4th 799, 804.) We agree.

The terms "a public issue" and "an issue of public interest," as applied in section 425.16, subdivision (e)(4), are substantively the same and interpreted broadly. (See *Du Charme v. International Brotherhood of Elec. Workers, Local 45* (2003) 110 Cal.App.4th 107, 119; *Rivera v. First DataBank, Inc.* (2010) 187 Cal.App.4th 709, 716.) An act involves an issue of public interest as long as the "'"conduct concerns a topic of widespread public interest and contributes in some manner to a public discussion of the topic." [Citation.]' [Citation.]" (*Rivera*, at p. 716.) Indeed, the term is so broad there is no requirement that the issue be

---

[3] The four categories include "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

6

significant. (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1042.) "[I]t is enough that [the issue] is one in which the public takes an interest." (*Ibid.*)

*Morrow v. Los Angeles Unified School Dist.* (2007) 149 Cal.App.4th 1424 (*Morrow*) is instructive. A high school principal sued the school district for defamation after the district superintendent discussed the principal's job performance with local newspaper reporters. The principal's performance had been called into question after a series of on-campus brawls. (*Id.* at p. 1429.) The court determined that the superintendent's statements to reporters regarding replacing the principal and the reasons for doing so constituted protected conduct. The court held that since the on-campus violence was an issue of public interest, the principal was "at the center of the story" and thus his performance was not a private matter. (*Id.* at pp. 1436-1437; see *McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 118-119 [statements concerning termination of university football coach were an issue of public interest]; *Fontani v. Wells Fargo Investments* (2005) 129 Cal.App.4th 719, 732 [statement as to why broker was terminated was protected under section 425.16, subdivision (e)(4)], disapproved on another ground in *Kibler v. Northern Inyo County Local Hosp. Dist.* (2006) 39 Cal.4th 192, 203, fn. 5.)

Here, Lucas's push for a recall election and the comments made by Torres relating to Lucas's job performance similarly involve an issue of public interest. Lucas was "at the center of the [recall] story," which was the subject of at least six newspaper articles. (*Morrow*, *supra*, 149 Cal.App.4th at pp. 1436-1437.) Lucas initiated the recall effort after being informed of her imminent release from probation, publicly criticizing Torres and the Board, both in comments to the media and in flyers distributed to the public. The Star's articles identified Lucas initially as a District teacher and later as a former District teacher. As the trial court aptly observed, "[a] member of the public following the issue would likely have an interest in whether [Lucas] was motivated by something other than her concern for

7

school children. For example, a disgruntled former school teacher could have a motive to fabricate or exaggerate allegations against those who she perceives caused her to lose her job. Thus, [Lucas's] motives and reasons for criticizing the trustees and promoting the recall were connected to the public issue of the recall. The fact that [Torres's] statements did not directly concern the recall does not remove them from being connected to the recall and the district board's decisions." (See *Ruiz v. Harbor View Community Assoc.* (2005) 134 Cal.App.4th 1456, 1468-1469 [plaintiff's conduct at board meetings and interaction with board members affected homeowners' association's governance and thus was of interest to community members].)

Pointing to *Flatley v. Mauro* (2006) 39 Cal.4th 299, 320, Lucas asserts that even if Torres's statements were a matter of public interest, the anti-SLAPP statute does not apply because Torres's conduct was illegal as a matter of law. She maintains that Torres violated the Ralph M. Brown Act (Act) (Gov. Code, § 54950 et seq.) by disclosing confidential information acquired about Lucas during a closed Board meeting. (See Gov. Code, § 54963, subd. (a).) The exception for illegal conduct, however, does not apply unless the alleged violation constitutes criminal conduct. As Division Eight of the Second Appellate District recently confirmed in *Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 806, "case authorities after *Flatley* have found the *Flatley* rule applies only to criminal conduct, not to conduct that is illegal because in violation of statute or common law." (See *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1169 [*Flatley* rule "is limited to criminal conduct"]; *Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654 (*Mendoza*) [same].)

Subject to certain exceptions, the Act requires open meetings for school boards and other local legislative bodies. (See Gov. Code, § 54950 et seq.)

8

To assist in enforcing the open meeting laws, the Act primarily authorizes civil remedies. (*Id.* at § 54960; *Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1287.) "Criminal penalties are available only where some action is taken by the legislative body in knowing violation of the Act." (*Ingram*, at p. 1287; see Gov. Code, § 54959.)[4] Here, Lucas does not allege that the Board took some action in violation of the Act. She alleges Torres violated a provision of the Act when she purportedly disclosed confidential information acquired during a closed meeting. Lucas has not shown this type of violation is punishable as a crime. (See Gov. Code, § 54959; *Ingram*, at p. 1287.) Hence, even if the alleged violation did occur, it does not remove Torres's statements from the protection of the anti-SLAPP statute. (*Mendoza*, *supra*, 182 Cal.App.4th at p. 1654.) The trial court correctly decided that Torres's speech was "protected activity" under the statute.[5]

### *Probability of Prevailing*

Once a defendant has met its burden to show the complaint alleges acts arising from protected activity, the burden shifts to the plaintiff to make a prima facie showing of facts which, if proven, would support a judgment in his or

---

[4] Government Code section 54959 provides that "[e]ach member of a legislative body who attends a meeting of that legislative body where action is taken in violation of any provision of this chapter, and where the member intends to deprive the public of information to which the member knows or has reason to know the public is entitled under this chapter, is guilty of a misdemeanor."

[5] In her reply brief, Lucas argues for the first time that Torres violated Government Code section 1098, which states: "Any current public officer or employee who willfully and knowingly discloses for pecuniary gain, to any other person, confidential information acquired by him or her in the course of his or her official duties, or uses any such information for the purpose of pecuniary gain, is guilty of a misdemeanor." An argument raised for the first time in the reply brief is waived for purposes of appeal. (*Buell-Wilson v. Ford Motor Co.* (2008) 160 Cal.App.4th 1107, 1160.) Even if the argument was not waived, Lucas has not pointed to any evidence in the record suggesting Torres disclosed confidential information for "pecuniary gain." (Gov. Code, § 1098.)

9

her favor. (*Equilon Enterprises*, *supra*, 29 Cal.4th at p. 67.) To satisfy this burden, plaintiff "cannot rely on the allegations of the complaint alone, but must present admissible evidence." (*Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39, 45.)

"Defamation requires a publication that is false, defamatory, unprivileged, and has a tendency to injure or cause special damage. [Citations.]" (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 277; *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1369.) The "sine qua non" of such a claim is falsehood. (*Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 426; *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 27.) "'In all cases of alleged defamation, . . . the truth of the offensive statements or communication is a complete defense against civil liability, regardless of bad faith or malicious purpose.' [Citations.]" (*Ringler Associates Inc. v. Maryland Casualty Co*. (2000) 80 Cal.App.4th 1165, 1180.) Furthermore, "it is not the literal truth or falsity of each word or detail used in a statement which determines whether or not it is defamatory; rather, the determinative question is whether the 'gist or sting' of the statement is true or false, benign or defamatory, in *substance*. [Citations.]" (*Id.* at pp. 1181-1182.) In other words, the question is whether the imputation of the remark is substantially true. (*Smith v. Maldonado* (1999) 72 Cal.App.4th 637, 646-647 (*Smith*).)

"The burden of pleading and proving truth is generally on the defendant. [Citation.] However, in an action initiated by a private person on a matter of public concern, the First Amendment requires that the plaintiff bear the burden of proving falsity. [Citations.]" (*Smith*, *supra*, 72 Cal.App.4th at p. 646, fn. 5; see also *Nizam-Aldine v. City of Oakland* (1996) 47 Cal.App.4th 364, 375 ["The First Amendment trumps the common law presumption of falsity in defamation cases involving private-figure plaintiffs when the allegedly defamatory statements pertain to a matter of public interest"].)

10

As previously discussed, the allegedly defamatory statements pertain to a matter of public interest. Therefore, the burden was on Lucas to make a prima facie case that they are substantially false. (*Carver v. Bonds* (2005) 135 Cal.App.4th 328, 347.) To meet this burden, she was required to present "evidence that the statements . . . diverged from the true facts in and to such manner and degree as to produce a more damaging effect on the mind of the reader than would the truth." (*Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1021 (*Vogel*).)

Torres told the Star's reporter that Lucas "was not a tenured teacher and was eliminated due to her performance." Torres also stated, "[t]he decision was made by management, not the school board." The only statement germane to our discussion concerns the basis for Lucas's elimination. It is undisputed Lucas was not a tenured teacher, and she has not demonstrated that it would produce a more damaging effect on her reputation if the reader understood she was "eliminated" by the Board rather than management. (See *Vogel*, *supra*, 127 Cal.App.4th at p. 1021.) Regardless of the decision-maker, the salient point involves her elimination.

Lucas maintains she was a probationary teacher who simply was "nonreelected" to her position. The parties agree Lucas was terminated under Education Code section 44929.21, which allows for the release of a probationary teacher without a statement of cause, as long as the governing board notifies the teacher, on or before March 15 of the teacher's second complete consecutive school year of employment of the decision not to reelect the teacher for the succeeding school year. (Educ. Code, § 44929.21, subd. (b).) Thus, prior to the third year of employment, "'[p]robationary teachers may be nonreelected without any showing of cause, without any statement of reasons, and without any right of appeal or administrative redress. . . .' [Citation.]" (*California Teachers Assn. v. Mendocino Unified School Dist.* (2001) 92 Cal.App.4th 522, 526-527.) If the governing board does not give notice of nonreelection by March 15, the probationary teacher is

11

deemed reelected for the succeeding school year and, as a consequence, is granted tenure. (Educ. Code, § 44929.21, subd. (b).) Employees who are tenured, or permanent, have a "property" interest in their jobs. (See *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 206-207.)

Lucas argues that if her job performance was an issue, she would have been terminated under Education Code section 44948.3, which allows a probationary teacher to be terminated for unsatisfactory performance. (*Id.* at subd. (a).) But this section applies only when the governing board wishes to dismiss a probationary teacher during the school year. It is undisputed Lucas was employed through the end of the 2011-2012 school year. It also is undisputed that the Board held a closed session in March 2012 to consider whether to reelect or nonreelect Lucas and several other probationary teachers under Education Code section 44929.21. As stated in *Fischer v. Los Angeles Unified School District* (1999) 70 Cal.App.4th 87 (*Fischer*), "[t]he Board's decision to reelect or nonreelect [under that section] necessarily involve[s] the 'evaluation of performance,' which [Government Code] section 54957 permits to be in a closed session." (*Id.* at p. 102; see *Furtado v. Sierra Community College* (1998) 68 Cal.App.4th 876, 881 [closed session held to consider employee's job performance for purposes of renewing employment contract].)

Accordingly, the purpose of the March 2012 closed session was to evaluate the job performance of Lucas and the other probationary teachers to assess whether they should be reelected or nonreelected for the succeeding school year. (See *Fischer*, *supra*, 70 Cal.App.4th at p. 102.) That Lucas was not reelected necessarily implies a performance concern. (See *ibid.*) Torres's statement in her declaration that Lucas "did not meet expected performance standards to merit re-employment" supports this implication. Lucas's opposing declaration neither addresses this assertion nor suggests she was meeting expected performance

12

standards or otherwise performing in a satisfactory manner.  Although she speculates her nonreelection was unrelated to her performance, "speculation is not evidence."  (*Rodriguez v. Nam Min Cho* (2015) 236 Cal.App.4th 742, 751.)

When the Star reported that Lucas "was not a tenured teacher and was eliminated due to her performance," the statement was unlikely to produce a more damaging effect on the mind of the reader than a statement reflecting Lucas's version of the truth, i.e., that the Board, after evaluating her performance, voted not to reelect her, thereby denying her tenure.  (See *Vogel*, *supra*, 127 Cal.App.4th at p. 1021.)  The "'gist or sting'" of the statements is substantially the same.  (*Ringler Associates Inc v. Maryland Casualty Co.*, *supra*, 80 Cal.App.4th at pp. 1181-1182.)  The former explicitly states the purported basis for Lucas's elimination, while the latter implies it.  Lucas's failure to produce evidence suggesting her job performance was a non-factor in her elimination may be understood to imply that it was a factor, at least in part.  In the absence of any contradictory evidence, the trial court properly concluded Lucas failed to make a prima facie case that the allegedly defamatory statements are substantially false.  (See *Carver v. Bonds*, *supra*, 135 Cal.App.4th at p. 347.)

Torres contends that even if Lucas did satisfy her burden of demonstrating falsity, the statements are absolutely privileged under Civil Code section 47, subdivision (a), which protects statements made "[i]n the proper discharge of an official duty."  This privilege, known as the executive officer privilege (*Morrow*, *supra*, 149 Cal.App.4th at p. 1440) or the official duty privilege (*Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, 1149, fn. 6), applies "to all state and local officials who engage in the policy-making process."  (*Royer v. Steinberg* (1979) 90 Cal.App.3d 490, 501 (*Royer*).)  Lucas, as the plaintiff, bears the burden of producing admissible evidence sufficient to overcome the assertion of the privilege.

(*Flatley*, *supra*, 39 Cal.4th at p. 323; *Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 447.) She has not met this burden.

There is no question that Torres was a local official involved in policy-making decisions. *Royer* suggests the privilege applies only to communications made when the official is exercising policy-making functions. (See *Royer*, *supra*, 90 Cal.App.3d at p. 501.) Although similar language is found in other cases, courts have held that *Saroyan v. Burkett* (1962) 57 Cal.2d 706, 710, "speaks more broadly of acts 'in the exercise of an executive function. . . .' [Citation.] This formulation better reflects the standard in *Barr v. Matteo* [(1959) 360 U.S. 564, 575], which asks whether the communication 'was an appropriate exercise of the discretion which an officer of that rank must possess if the public service is to function effectively.' [Citation.] It is not necessarily inconsistent with language referring to the 'exercise of policy-making functions' but calls for a broad interpretation of this language to encompass all discretionary acts essential to the proper exercise of an executive function." (*Copp v. Paxton* (1996) 45 Cal.App.4th 829, 843-844.)

Public officials have a general duty to keep the public informed about public business. (*Maranatha Corrections, LLC v. Department of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1075, 1088-1089 (*Maranatha*).) As the Board's president, Torres was vested with the authority to speak to the media regarding matters involving the Board or District. District Board Policy No. 1112 states specifically that "[s]pokespersons designated to speak to the media on behalf of the district include the *Board president*, Superintendent and public information officer." (Italics added.) The Bylaws go a step further, stating Board members "have a responsibility to express themselves, whether in agreement or disagreement with the Board majority, in ways that promote the Board's ability to govern the [D]istrict." (District Board Bylaw 9010.)

14

*Morrow*, *supra*, 149 Cal.App.4th 1424, highlights the official informational duties of high-level school officials. In upholding the dismissal of the principal's suit against the school's superintendent under the anti-SLAPP statute, the court determined that the statements regarding the principal's replacement were not "unrelated to a legitimate policymaking function" of the superintendent; indeed, his official duties included publicly explaining the district's response to the increased violence at the school. (*Id.* at pp. 1442-1443, see also p. 1431 [noting superintendent's argument that he had "an official duty to communicate with the press about matters of public concern"]; *Maranatha*, *supra*, 158 Cal.App.4th at p. 1089 [official duty privilege protected director's statements involving consideration of public issue by a policymaking state official].)

From the evidence in the record, it is undisputed that Torres was asked to speak to the press regarding the recall campaign and did so in her capacity as Board president. The subject of her speech involved the Board's response to the campaign which, if successful, would have resulted in a recall election of Torres and two other Board members. Unquestionably, Torres had the authority to express her opinion about the recall effort and to respond to the reporter's questions regarding the employment status of the District teacher spearheading the campaign. As previously discussed, Lucas's motivation for initiating the campaign was a public issue; thus, it was within the scope of Torres's official duties to address it. (See *Copp v. Paxton*, *supra*, 45 Cal.App.4th at pp. 843-844.)

In sum, Torres was acting in her official capacity when the Star's reporter asked her to explain why Lucas was no longer employed by the District. Her responsive statements were made as part of her responsibility to communicate with the public regarding issues directly affecting the District. (See *Morrow*, *supra*, 149 Cal.App.4th at pp. 1442-1443.) Thus, regardless of whether the statements are true or false, they are absolutely privileged under Civil Code section 47, subdivision

15

(a).  We conclude Lucas has failed to demonstrate the probability of prevailing on the merits of her defamation claim.[6]

DISPOSITION

The orders granting the special motion to strike and awarding attorney fees to respondent are affirmed.  Respondent shall recover her costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

---

[6] In light of our decision, we need not reach Torres's alternative contention that Lucas was a limited public figure and, as such, must prove actual malice as part of her defamation claim.

16

Tari L. Cody, Judge

Superior Court County of Ventura

_____

Lynette Lucas, in pro. per., for Plaintiff and Appellant.

Walsh & Associates, APC, Dennis J. Walsh, George E. Ordonez, for Defendant and Respondent.