Filed 1/7/25  Coast National Insurance Co. v. Klinefelter CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| COAST NATIONAL INSURANCE COMPANY,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>MARGIE A. KLINEFELTER et al.,<br><br>Defendants and Respondents. | D084514, D084515<br><br><br>(Super. Ct. No. CIVSB2203671) |

APPEALS from an order of the Superior Court of San Bernardino, John M. Pacheco, Judge.  Affirmed.

Horvitz & Levy, Karen M. Bray, Felix Shafir; Lehavi Stargardter and Limor Lehavi for Plaintiff and Appellant.

McGee, Lerer & Associates, Daniel M. McGee, Catherine Lerer; Esner, Change, Boyer & Murphy, Andrew N. Chang, and Rowena J. Dizon for Defendants and Respondents.

Coast National Insurance Company (Coast National) appeals the trial court's granting of Margie A. Klinefelter, Nicholas Cappiello (Nicholas), and

Tiffany Camarillo's (Tiffany)[1] (collectively, the Klinefelter parties) special motion to strike under Code of Civil Procedure[2] section 425.16[3] and the striking of its breach of contract cause of action. It contends the court erred in concluding the parties never entered into a settlement agreement and that, therefore, no contract existed. We disagree and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Accident and Settlement Offer*

In January 2021, a vehicle driven by Coast National's insured, David Manuel Vasquez, collided with a vehicle driven by Anthony Cappiello, in which Klinefelter was a passenger. Klinefelter was injured, while Cappiello died as a result of the accident. Cappiello was survived by his adult children, Nicholas and Tiffany. Vasquez was arrested and charged with several crimes. Bristol West Insurance (Bristol West) handled the bodily injury liability claims related to the accident under an insurance policy issued to Vasquez and underwritten by Coast National.

On January 26, 2021, counsel for the Klinefelter parties sent a letter to Bristol West offering to settle their claim for damages against Vasquez

---

[1]   For purposes of clarity, we refer to Nicholas and Tiffany by their first names. We intend no disrespect.

[2]   Statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3]   Section 425.16 is commonly referred to as the anti-SLAPP statute because a special motion thereunder seeks to strike a " '[s]trategic lawsuit against public participation,' " or SLAPP. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 882, fn. 2 (*Wilson*).)

within policy limits.  The letter set forth the following specific terms for the offer:

>  "If you want to settle this claim within your insureds' policy limits, you must unequivocally:
>
>  "1. Offer all of your company's applicable policy limits in writing, this includes other applicable insureds with your company, including your applicable insureds that we are unaware of.
>
>  "2. Be diligent to locate other possible insurance policies and inform them of this offer.  Provide us with all the contact information for the other carrier(s) the day you learn of other Insurance policies.
>
>  "Provide us with a notarized statement from your insured driver and owner, if different that they are unaware of other insurance policies that might provide coverage for this accident.
>
>  "3. Provide us with a certified copy of your declaration page.
>
>  "4. Provide us with a notarized statement from your insured driver as to whether or not your insured driver was an agent at the time of the accident.
>
>  "5. Provide us with an acceptable release.
>
>  "The written acceptance and compliance with these terms must be in our hands before February 17, 2021.  No term is more important than any other term; therefore, this offer cannot be accepted without the unequivocal acceptance and compliance of all the terms.  Below is an explanation of terms 4 and 5.  If there are other possible applicable policies, we cannot sign any release until we are ready to settle all claims against your insureds."

3

Regarding term 4, the letter requested a declaration of agency as specified:

> "Your insured driver's signature on the declaration of agency must be notarized and include: your insured driver's name; where your insured driver was coming from at the time of this accident; where your insured driver was going to at the time of this accident; the purpose of the insured driver's trip at the time of this accident; and, whether or not your insured driver was employed at the time of this accident. If your insured driver was unemployed, please provide a notarized declaration informing us of this fact."

As to the release required by term 5, counsel also "reserve[d] the right to verbal/written statements under oath and/or physical records from your insureds regarding any further information we feel we may need before we sign the release." The letter further clarified what would constitute an "acceptable release," stating:

> "Do not attempt to release or protect parties that are not insured under your policy. Do not attempt to release damages that are not part of this settlement. Do not attempt to include liens in your release and/or settlement offer that are not your legal duty. Do not deny or dispute liability. Do not try to impose or transfer duties or risks onto our client or our firm that are your legal duties or risks. Do not attempt to impose or transfer duties and/or risks onto our client(s) or law firm that are not our client's or firm's legal duties or risks to assume and/or may be unethical for our firm to assume. Do not send us a release or a proposed release that does not meet the terms of this offer; if you do, we will consider it a counteroffer and pursue your insureds for the full value of our client's claim."

The letter closed by requesting that Bristol West contact the law firm's pre-litigation manager if the offer was unclear or if they wanted to alter a term or

4

condition.  It further stated, "If we agree to alter any 'Terms' or conditions, you must receive this change in writing by a partner of our law firm."

On February 4, 2021, William Decker, a senior claims adjuster for Bristol West, contacted the pre-litigation manager via email and reached out to counsel for the Klinefelter parties via regular mail.  He requested documentation confirming that Nicholas and Tiffany were Cappiello's rightful heirs, a copy of Cappiello's death certificate, and a "Declaration of Agency" template, if they had one.  Given that Vasquez remained incarcerated and subject to visitation restrictions due to the Covid-19 pandemic, he also requested waiver of the notarization requirement for Vasquez's declarations regarding coverage and agency and additional time to respond.  He did not receive responses, so he emailed the pre-litigation manager again on February 8, 2021, reiterating the same questions and requests.

Counsel for the Klinefelter parties responded on February 11, 2021, and agreed to waive the notarization requirement.  He further stated that they did not have an agency declaration template and "d[id] not believe [the Klinefelter parties] need[ed] additional time to respond to claimants' settlement offer."

On February 16, 2021, a day before the deadline, Decker emailed and faxed letters to counsel for the Klinefelter parties that provided the following response to the settlement offer:

> "We are accepting your demand to settle for the policy limit of $15,000.00.
>
> "Enclosed is a release for your review.  Please have your client(s) execute the release and return it to our National Document Center at the address above or fax it to [number] if it meets your approval.  If it does not meet your approval, please contact the undersigned so we can address the issue(s) expediently.  Please include a claim number on all correspondence or use this letter as a cover sheet.

5

"A certified copy of our insured's declarations page, an executed Declaration of Agency, an executed Declaration of Unemployment, an executed Declaration of No Other Insurance, and an email from [counsel for the Klinefelter parties] waiving the notarization requirement is also enclosed."

Counsel for the Klinefelter parties sent a response on March 3, 2021, which stated, "This letter is in response to your February 16, 2021 offers. We do not accept your settlement offers for any of our clients."

## II.

### *Lawsuits*

In February 2022, the Klinefelter parties sued Vasquez in San Bernardino County Superior Court. In their amended complaint, they allege two negligence causes of action, a survival claim, and one declaratory relief cause of action seeking a declaration that the parties had not settled (*Klinefelter, et al. v. Vasquez*, San Bernardino case No. CIVSB2203671) (the *Klinefelter* action).

In August 2022, Coast National filed suit against the Klinefelter parties, also in San Bernardino County Superior Court (*Coast Nat'l Ins. Co. v. Klinefelter, et al.*, San Bernardino case No. CIVSB2219457) (the *Coast National* action). Their first cause of action for breach of contract alleged the parties had a valid and enforceable settlement agreement that the Klinefelter parties had breached by filing the *Klinefelter* action. The second cause of action, for declaratory relief, sought a declaration that the settlement agreement was valid and enforceable. The third cause of action sought specific performance of the settlement agreement.

Coast National also filed a complaint-in-intervention in the *Klinefelter* action, asserting one claim for a declaration that the parties had an enforceable settlement contract.

6

III.

*Anti-SLAPP Motion and Order*

In January 2023, the Klinefelter parties filed an anti-SLAPP motion in the *Coast National* action seeking to strike Coast National's breach of contract claim. They asserted that their filing of a lawsuit was a protected activity within the meaning of section 425.16. Thus, they argued Coast National's breach of contract cause of action should be stricken because it was based on the Klinefelter parties' protected act of filing a wrongful death complaint.

The Klinefelter parties explained that the burden then shifted to Coast National to establish a probability that it would prevail on the merits of its breach of contract claim. They added that section 425.16, subdivision (b) and *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 824, imposed an added burden that Coast National overcome the Klinefelter parties' constitutional defenses. In particular, they highlighted the defenses raised in their fifth affirmative defense that "they have a protected right and privilege to engage in the activity by which Plaintiff claims to have been injured, including [the Klinefelter parties'] filing of their personal injury action, which constitutes protected activity under California statute including but not limited to Code Civ. Proc. § 425.16, Civ. Code § 47 and the U.S. Constitution and California Constitution." Again citing *Wilcox,* the motion stated that "It is well settled the First Amendment creates a privilege from civil liability for actions constituting the exercise of the right to petition the government for redress of grievances (citation) and this right encompasses the act of filing a lawsuit . . . ." The anti-SLAPP motion also sought recovery of attorney fees and costs.

In opposing the motion, Coast National argued its "evidence in conjunction with this motion shows that a binding contract was formed when Coast National sent the Acceptance Letters in response to the Offer Letter from the Klinefelter parties and fulfilled all conditions stated in the offer . . . ." It pointed out that, in the *Klinefelter* action, "the only after the fact excuses the Klinefelter parties could come up with in an attempt to open the policy were that the policy declarations Coast National provided were not certified, and that the release included Vasquez's 'principals, agents, heirs and representatives' who were persons not insured under Vasquez's Coast National insurance policy. This latter fact purportedly presented a problem because the Offer Letter stated '[d]o not attempt to release or protect parties that are not insured under your policy.' " However, Coast National contended the declarations were certified and that the standard release language did not attempt to release parties not insured under the policy.

The Klinefelter parties' reply brief focused on Coast National's failure to overcome the petition and litigation privileges. They argued that Coast National's evidence about the parties' settlement communications demonstrated that the Klinefelter attorneys were zealously advocating for their clients. They further highlight that their attorneys' interpretation of Coast National's acceptance as invalid was debatable under California law and that their opinions were protected by the First Amendment. In their view, the parties' respective claims for declaratory relief were the appropriate vehicle for resolving the dispute; suing the Klinefelter parties alone for damages, separate from their counsel, was "a step too far."

The Klinefelter parties also argued Coast National's evidence demonstrated it did not unequivocally accept and comply with the terms of the settlement offer. The offer instructed Coast National: "Do not attempt to

release or protect parties that are not insured under your policy. . . . Do not deny or dispute liability. . . . Do not send us a release or a proposed release that does not meet the terms of this offer; if you do, we will consider it a counteroffer and pursue your insureds for the full value of our client's claim." The Klinefelter parties submitted that Coast National's response did not comply with these terms because the release included the following language: "I/we, Margaret Klinefelter, release and forever discharge David Manuel Vasquez and their principals, agents, heirs and representatives . . . " and " . . . there is no admission of liability."

At the beginning of the hearing, the court sent the parties its tentative ruling granting the anti-SLAPP motion. Thereafter, Coast National's counsel indicated that Coast National was not disputing that the motion related to protected activity.

In its final order, the court granted the motion and struck Coast National's breach of contract cause of action. The court found that the breach of contract cause of action "ar[ose] from protected activity, namely, [the Klinefelter parties'] filing of the ongoing personal injury action," and observed that Coast National appeared to concede as much. As to whether Coast National met its burden to show the probable validity of its claim, the court noted that, had there been a valid settlement agreement, the claim would have been legally sufficient. However, it concluded Coast National "failed to submit evidence upon which a valid contract could be found." In particular, the court explained:

> "Even assuming defendants' proposal was sufficiently specific enough to constitute an acceptable offer, the terms of defendants' proposal required actual performance for there to be acceptance, i.e. Coast National's mere stated acceptance was insufficient to form a contract. (See Davis

9

v. Jacoby ( 1934) 1 Cal.2d 370, 378 [discussing the distinction between unilateral and bilateral contracts].)

". . . .While Coast National attempted to tender the documents defendants demanded, the letter from defendants made clear that an acceptable release agreement would not cover 'parties that are not insured under [its] policy' and could not contain a denial of liability. The release submitted by Coast National released Vazquez and his 'principals, agents, heirs and representatives. . . .' The release also had a provision indicating there was no admission of liability, which is significant given defendants' express requirements and since the proposed release contained other language suggesting Vazquez retained his right to sue for damages. 'An acceptance must be absolute and unqualified' and a 'qualified acceptance is a new proposal.' (Civ. Code, § 1585; Panagotacos v. Bank of America (1998) 60 Cal.App.4th 851, 855-856.) As a result, no contract was ever formed."

The court awarded fees in favor of the Klinefelter parties. It also consolidated the Klinefelter action with the Coast National action.

IV.

*Appeals*

The court granted the anti-SLAPP motion by minute order on March 3, 2023, and ordered the Klinefelter parties' counsel to prepare the order. Counsel did so, but when the court did not sign it right away, Coast National filed a notice of appeal on April 4, 2023, in an abundance of caution. The court finally signed the order on June 30, 2023. Coast National then filed another notice of appeal on August 11, 2023. The Klinefelter parties asked Division Two of this court to consolidate the two cases, which it did,

10

before the matter was transferred to this division.  Both appeals pertain to the exact same parties and trial court order.[4]

DISCUSSION

"[T]he anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern.  [Citations.]  To that end, the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' " (*Wilson, supra,* 7 Cal.5th at pp. 883–884.)

"Litigation of an anti-SLAPP motion involves a two-step process.  First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.]  Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.]  If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.)

We review an order granting or denying an anti-SLAPP motion de novo.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)  Therefore, we engage in the same two-step process that the trial court undertook in assessing an anti-

---

4    Although the procedural posture by which this consolidated matter came to us is somewhat unusual, we conclude both appeals would have been independently appealable and timely.  The court's minute order was not appealable because it called for preparation of a subsequent order (*Davis v. Taliaferro* (1963) 218 Cal.App.2d 120, 123), but pursuant to California Rules of Court, rule 8.104(d)(2) and (e), we would have treated the notice of appeal as filed after entry of the appealable order on June 30, 2023.

SLAPP motion. (See *Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1652.)

In this case, Coast National does not contest that the anti-SLAPP statute applies, so the dispute lies at the second prong of the analysis; namely, whether Coast National demonstrated that its breach of contract claim has at least minimal merit.

This oft-quoted minimal merit language requires some elaboration. The second prong analysis required under section 425.16 requires the plaintiff to "establish[ ] that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) To establish this probability, "the plaintiff need only have ' "stated and substantiated a legally sufficient claim." ' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).) "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 (*Parker*).)

"In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant [citation]; though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." (*Parker*, *supra*, 28 Cal.4th at p. 821; accord *GetFugu, Inc. v. Patton Boggs LLP* (2013) 220 Cal.App.4th 141, 155.)

As discussed, this matter involves a purported agreement to settle. " 'A settlement agreement is a contract, and the legal principles which apply to

12

contracts generally apply to settlement contracts.' " (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 789 (*Monster Energy*).) To demonstrate that the Klinefelter parties breached the purported settlement contract, Coast National must establish the existence of a contract, Coast National's performance or excuse for nonperformance, the Klinefelter parties' breach, and resulting damages to Coast National. (See *J.B.B. Investment Partners Ltd. v. Fair* (2019) 37 Cal.App.5th 1, 9.)

The foundational issue in dispute here is the first element, with the parties disputing whether a contract exists. A contract does not exist without the following: "1. [p]arties capable of contracting; [¶] 2. [t]heir consent; [¶] 3. [a] lawful object; and, [¶] [a] sufficient cause or consideration." (Civ. Code, § 1550.) "Consent is not mutual, unless the parties all agree upon the same thing in the same sense." (Civ. Code, § 1580.) " ' "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe. [Citation.] Accordingly, the primary focus in determining the existence of mutual consent is upon the acts of the parties involved." ' " (*Monster Energy*, *supra*, 7 Cal.5th at p. 789.)

As the trial court explained, it has long been the case that an offeror may seek acceptance, not in the form of a promise to perform, but by performance. (*Davis v. Jacoby* (1934) 1 Cal.2d 370, 378; Civ. Code, § 1584 ["Performance of the conditions of a proposal, or the acceptance of the

consideration offered with a proposal, is an acceptance of the proposal"].)[5] Whichever mode of acceptance the offer requests, the "acceptance must be absolute and unqualified . . . [a] qualified acceptance is a new proposal." (Civ. Code, § 1585.) In other words, the " 'terms proposed in an offer must be met exactly, precisely and unequivocally for its acceptance to result in the formation of a binding contract [citations]; and a qualified acceptance amounts to a new proposal or counteroffer putting an end to the original offer . . . .' " (*Panagotacos v. Bank of America* (1998) 60 Cal.App.4th 851, 855–856.)

We agree with the court's conclusion that the Klinefelter parties' offer, in stating that "this offer cannot be accepted without the unequivocal acceptance and compliance of all the terms," conditioned acceptance upon *performance* of the terms set forth in the offer. One of the terms was to provide them with "an acceptable release." The Klinefelter parties expressly instructed Coast National in the offer, "Do not attempt to release or protect parties that are not insured under your policy" and "Do not deny or dispute liability." In response, Coast National offered a release that "releases and forever discharges David Manuel Vasquez *and their principals, agents, heirs and representatives*, from any and all rights, claims, demands, causes of action, and damages of any kind, known or unknown, existing or arising in the future, resulting from or related to bodily injury, and/or death from an accident that occurred on or about January 5, 2021, at or near Fontana, CA."

---

[5] As the Restatement (Second) of Contracts explains, "Language or circumstances sometimes make it clear that the offeree is not to bind himself in advance of performance. His promise may be worthless to the offeror, or the circumstances may make it unreasonable for the offeror to expect a firm commitment from the offeree. In such cases, the offer does not invite a promissory acceptance, and a promise is ineffective as an acceptance." (Rest.2d Contracts § 32, com. b.)

14

(Italics added.) The release further stated, "there is no admission of liability." This language does not "exactly, precisely and unequivocally" match the terms of the offer such that Coast National may be said to have performed in a manner that constituted acceptance of the offer. Stated differently, it is not evident from the plain language of the release that Coast National met its burden of supporting its claim that a contract exists with " 'a sufficient prima facie showing of facts.' " (*Parker, supra*, 28 Cal.4th at p. 821.)

Coast National challenges this conclusion on multiple grounds. First, Coast National contends we should follow the decisions in the recent, similar cases of *CSAA Ins. Exchange v. Hodroj* (2021) 72 Cal.App.5th 272 (*Hodroj*) and *Travelers Commercial Insurance Company v. Hall* (C.D. Cal., Mar. 15, 2023, No. CV 22-8234 PA (MAAx)) 2023 U.S. Dist. LEXIS 115226 (*Travelers*).[6] We find both cases distinguishable. In *Hodroj*, the offer was "conditioned on written acceptance within 21 days." (*Hodroj*, at p. 275.) Although the offer allowed *CSAA* to condition their acceptance of the offer by requiring Hodroj to "execute a Release of all Bodily Injury Claims against [CSAA's] insureds and their heirs only, which Release is not inconsistent with the terms and conditions of this offer" (*id.* at p. 277), Hodroj did not require a release as an acceptance term. Likewise, in *Travelers*, even though the same firm that represents the Klinefelter parties here made a similar

---

[6] " 'Although not binding, unpublished federal district court cases are citable as persuasive authority.' " (*Gray v. Quicken Loans, Inc.* (2021) 61 Cal.App.5th 524, 528, fn. 2.)

15

settlement offer,[7] the terms specified only that, " '[W]ritten acceptance of these terms must be in our hands before December 31, 2019.' " (*Travelers,* at p. \*2.) In neither case did the offer appear to expressly require acceptance in the form of performance of the terms of the contract.[8] Thus, authority supported those courts in concluding that written acceptance was sufficient to form the contract, even if the subsequently presented release did not fully conform to the language of the offer. In other words, because here performance was a material term of the contract, our conclusion in this case does not violate the "well-established principle of contract law" that "when parties agree on the material terms of a contract with the intention to later reduce it to a formal writing, failure to complete the formal writing does not negate the existence of the initial contract." (*Hodroj*, at p. 276.) Here, the offer did not contemplate the release would be a later reduction of the

---

[7] The settlement offer "stated, in part: 'If you want to settle this claim within your insured's policy limits, you must . . . offer all of your applicable policy limits in writing,' '[p]rovide us with a copy of your declarations page,' and '[p]rovide us with an acceptable release.' " (*Travelers*, *supra*, 2023 U.S. Dist. LEXIS at p. \*2.) It further provided: " 'The release must only release your insureds. Do not attempt to release parties that are not under your policy' and 'do not send us a proposed release that clearly does not meet the terms of this offer; if you do, we will consider it a counter offer and pursue your insureds for the full value of our client's claim.' " (*Ibid.*)

[8] In its reply brief, Coast National argues neither case is distinguishable on this point. It certainly is possible the offers and releases in those cases employed identical language and the reviewing courts simply did not recite all of the relevant language to make that clear. If that was the case, we respectfully disagree with their conclusions. However, our review of the *Hodroj* and *Travelers* opinions does not reveal that those claimants expressly conditioned acceptance on compliance with of all these terms, including a compliant release, in the same way the Klinefelter parties did here. On these facts, we conclude Coast National has not demonstrated a valid acceptance of the contract pursuant to Civil Code section 1585.

agreement to writing. Rather, the contract was not formed *until* an acceptable release demonstrating unqualified acceptance was provided.

Seemingly having learned from these cases, the Klinefelter party's counsel retooled the offer letter to *require*, versus allow, an "acceptable release" and to state that "written acceptance *and compliance* with these terms must be in our hands before February 17, 2021." (Italics added.) We conclude this addition language makes acceptance of the instant offer contingent upon performance of the terms of the offer, thus making it materially different from the ones put forth in *Hodroj* and *Travelers*.[9]

Coast National next argues that its release of "principals, agents, heirs and representatives" does not run afoul of the offer's prohibition of any "attempt to release or protect parties that are not insured under your policy." They first assert that the Klinefelter parties have never suggested that anyone other than Vasquez could have been a "party" to their personal injury action or provided evidence that they could have sued any other "party." This contention interprets the demand that Coast National not "attempt to release or protect *parties* that are not insured under your policy" (italics added) as referring only to "parties" to the subsequent lawsuit. Our initial observation is that, given that the Klinefelter parties sent this offer a year before they filed suit, a more reasonable interpretation of their reference to "parties" in

---

9    Both parties cast aspersions on the other regarding their motives in making such strategic decisions, but we need not comment on any of these motives to conclude that *Hodroj* and *Travelers* do not dictate the outcome of this case.

their offer is simply as referring to individuals.[10]  Regardless, the Klinefelter parties dispute Coast National's assertion, pointing to allegations in their complaint that Doe defendants employed Vasquez and that he was an agent and employee acting within the scope of his agency.  In our view, a reasonable person would not find mutual consent to a term Coast National sought to add simply because, at the pre-litigation stage, the Klinefelter parties had not yet identified by name an employer Doe defendant.  As the Klinefelter parties explained, this was a material point in any release for them because an employer potentially would have a higher policy limit that would adequately compensate them for their losses.  Thus, an acceptance that added a term waiving liability for a potential employer would not match the offer.

Even if the settlement offer is read as prohibiting the release of *anyone* not insured under the policy, Coast National submits there is no evidence the release deviated from this prohibition.  It goes on to state that "[t]he policy expressly covered several drivers in addition to Vasquez—i.e., Michelle Garcia, Ernesto Vasquez, and Gloria Vasquez" and that "[t]here is no evidence these additional individuals were not Vasquez's principals, agents, heirs, and representatives."[11]  The Klinefelter parties respond by arguing

---

10    One definition of "party" is "a particular individual:  PERSON." (Merriam-Webster's Unabridged Dict. Online (2024) <https://unabridged.merriam-webster.com/unabridged/party, par. 6(b)> [as of January 7, 2025], archived at <https://perma.cc/XWT6-3GME> [select "View the live page"].)

11    The Klinefelter parties contend Coast National waived this argument because it did not raise it in the trial court.  Coast National disputes this assertion.  Although it appears Coast National's argument at the hearing was somewhat different than the one they make on appeal, it is not a clear case of forfeiture.  Regardless, as we explain, the argument fails on the merits.

that it was Coast National's burden, not theirs, to demonstrate that these individuals were insured under its policy and that no one else could be Vasquez's "principals, agents, heirs and representatives."

The status of these drivers is not entirely clear because only Vasquez is listed under the heading "Named Insured." Ernesto and Gloria Vasquez are listed as "additional drivers" on the declaration page produced by Coast National but the page states that they are "excluded." Likewise, Michelle Garcia is listed as a "driver" for "Vehicle 1" but is not identified as an insured driver. Coast National does not elaborate as to what this information means. Even if we credit Coast National's evidence as demonstrating that it insured these other individuals under the policy (see *Parker*, *supra*, 28 Cal.4th at p. 821), since Coast National wanted to add the language about "principals, agents, heirs and representatives" to the release, it had the burden of setting forth the evidence showing that the release did not "attempt to release or protect parties that are not insured under your policy."

Coast National responds that it provided the declarations from Vasquez the offer requested, which demonstrated that he was not employed or acting as an agent at the time of the accident. It also points to a declaration it provided from a woman experienced in providing "consulting and expert testimony regarding the theoretical and practical aspects of claims handling" that asserted it is common custom in the insurance industry to release the insured as well as their "principals, agents, heirs and representatives" and that "[t]hese are not 'parties that are not insured' under the policy." But again, when the Klinefelter parties requested the employment and agency declarations from Vasquez, they did not express in the offer a willingness to waive claims against any employers, should it turn out Vasquez was lying. Instead, they expressly warned Coast National *not* to attempt to release or

19

protect parties that were not insured under the policy.  Thus, if Coast National wanted to add language and show that it still complied with the terms required for acceptance, it was its burden to provide further evidence regarding Vasquez's lack of employment.  A declaration indicating such language is typical in the industry and seemingly meaningless[12], is not sufficient to demonstrate unequivocal acceptance in this case.

Turning to the next disputed passage in the release, Coast National's view is that stating "there is no admission of liability" is not synonymous with denying liability.  At the hearing, Coast National argued such a statement simply does not admit liability and analogized it to the use of the phrase "I won't admit or deny" in discovery responses.  We do not find this to be an apt analogy.  Although Coast National did not explain its reasoning, this phrase might be used in the discovery context when the responding party does not *know* all the facts necessary to fully answer the question posed without further discovery.  Here, by contrast, Coast National seeks to unequivocally accept an offer that says "Do not deny or dispute liability" by expressly disclaiming any admission of liability.  What is left when one refuses to admit liability?  The most obvious inference is that the party denies liability but, at the very least, one clearly disputes liability.  Accordingly, this response is not an unqualified acceptance of the offer.

The only case Coast National relies on to argue the proposed release does not dispute liability when it says, "there is no admission of liability" is *Jerves v. United States* (9th Cir. 1992) 966 F.2d 517.  Putting aside that the Ninth Circuit's interpretation of federal law does not bind us in interpreting

---

[12]    As the Klinefelter parties highlight, if there were no "principals" not insured under the policy—other than, potentially, Michelle Garcia, Ernesto Vasquez, and Gloria Vasquez—why did Coast National feel compelled to include "principals" in the release?

20

California law, this case does not provide the firm precedent Coast National suggests it does. The court in *Jerves* was evaluating whether a woman who was injured on a naval base and sued the United States had complied with Title 28 United States Code section 2675(a). (*Jerves*, at p. 519.) This statute prohibits federal government employees from suing the United States for money damages under certain circumstances without first presenting the claim to the appropriate federal agency and "either receiving a conclusive denial of the claim from the agency or waiting for six months to elapse without a final disposition of the claim being made." (*Ibid.*) The claimant did not wait six months and alleged that a settlement offer from the agency constituted a conclusive denial even though it stated, "[w]ithout admitting liability and without prejudice, the United States of America is willing to settle all claims . . . ". (*Ibid.*) The Ninth Circuit disagreed, explaining that "[n]owhere in the letter does the [agency] declare that it has reached a final conclusion regarding Jerves' claim." (*Ibid.*) As further evidence that this was not a conclusive denial, the Ninth Circuit explained that "[a]lthough the [agency] does not admit liability neither does it deny liability on behalf of the United States." (*Ibid.*) This last statement establishes only that, under the relevant federal statute, the phrase "without admitting liability" is not a clear statement that a government agency has definitively denied a claimant's claim, allowing the claimant jurisdiction to file a lawsuit.

Even if we were to apply *Jerves* to the release language here that "there is no admission of liability," we would conclude the release does not make a clear statement as to liability. In other words, it could reasonably be interpreted as denying or disputing liability and, thus, is not an "absolute and unqualified" acceptance of the offer. (Civ. Code, § 1585.) Accordingly, we

21

conclude Coast National has not substantiated a legally sufficient breach of contract claim.  (*Navellier*, *supra*, 29 Cal.4th at p. 88.)

On a final note, Coast National argues that, because the Klinefelter parties acknowledged it was "a debatable position as to whether or not the parties reached a settlement agreement," all doubts should be resolved in Coast National's favor, and we should permit the breach of contract claim to proceed and have a trier-of fact decide the factual question of whether Coast National sufficiently accepted the settlement offer.  Coast National cites for this supposed concession by the Klinefelter attorneys to the Klinefelter parties' reply brief in the lower court, wherein the attorneys addressed the petition privilege and their duty to zealously advocate for their clients, and to oral argument on the same issue.  The Klinefelter attorneys made this statement in the context of explaining that they advised their clients that Coast National's response did not unequivocally accept the offer and arguing that an attorney's opinion, right or wrong, is protected by the First Amendment.  They argued Coast National was "trying to retaliate and conduct strategic litigation by suing the clients only, which drives a wedge between [the] attorney-client relationship" and makes attorneys afraid to advise their clients about settlement.

There is always a debate in litigation as to which side has the correct interpretation.  We will not construe the facts against one side simply because their counsel acknowledged the existence of the dispute.  Attorneys

22

rendering an opinion to their clients that they have a legally tenable position is not extrinsic evidence of the existence of mutual assent to a contract.[13]

Accordingly, we conclude Coast National has not established that there is a probability that it will prevail on its breach of contract claim. (See § 425.16, subd. (b)(1).)[14]

## DISPOSITION

The order is affirmed. The Klinefelter parties are entitled to their costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.

---

[13] Coast National also argued that "the fact that two different courts—the trial court here and the *Travelers* court—reached diametrically different conclusions as to whether a settlement contract was formed based on virtually identical facts alone compels the conclusion Coast National's breach of contract claim should not be stricken under the anti-SLAPP statute." This argument is unavailing because it is based on the faulty premise that the material facts are identical, which we have concluded they are not.

[14] Because we conclude the evidence proffered by Coast National does not establish formation of a binding contract, we need not reach the parties' arguments regarding the Klinefelter parties' asserted defenses of privilege.